JAMES JOHNSTON ET AL. v. THE LASKER REAL ESTATE ASSOCIATION.

No. 82.

1. **Defense of Usury made by Junior Encumbrancer.**—A bank held notes secured by lien upon realty. Appellant Martin held a junior lien, dated June 25, 1885. In December, 1885, the debtor, Johnston, executed to the bank one note for his total indebtedness to it, due at ninety days, which included a discount of eighteen per cent, and at the end of every ninety days a new note was executed and discounted at the same rate, the lien notes being held by it as collateral security. Desiring further extension, on January 1, 1887, Johnston executed a new note to plaintiff, bearing 12 per cent interest, payable eighteen months after date, and reciting that the other notes were held by and hypothecated to plaintiff as collateral security for its payment. Plaintiff paid Johnston's indebtedness to the bank, and the lien notes were by the bank transferred to plaintiff. By agreement annexed, Johnston recognized the validity of the lien notes, and waived the statute of limitation. Mrs. Martin pleaded as a defense against the elder lien notes, usury. As a junior encumbrancer she could avail herself of whatever defense Johnston had, although he was a party to the suit and suffered judgment by default.

2. **Limitation Waived, Effect of.**—The agreement of December 30, 1886, made by Johnston with plaintiff, acknowledged the validity of the three lien notes, and promised to pay them, waiving the statute of limitations; and though it was a promise made by him subsequent to the execution of the junior encumbrance, the weight of authority is, that he had the right to waive limitation, though it would deprive the junior encumbrancer of the defense of limitation.

3. **Extension of Senior Mortgage Debt.**—It was also competent for the mortgagor to arrange for an extension of the time of payment of the senior mortgage debt, and such an agreement to extend the time will not discharge the lien of the mortgage as to subsequent encumbrancers.

4. **Amount Forfeited for Usury.**—Two of the elder lien notes were not tainted with usury when made; it was only after they were transferred to the bank that the question of usury arises. As to the amounts represented by these notes, the entire interest should not be forfeited, but only the excess of interest over the amount of interest called for by their face.

5. **Same.**—The $3500 note was discounted to the bank for $2865, being at the rate of 18 per cent per annum, and the contract was usurious, and all payments of interest on this note, whether by way of discount or otherwise, should be applied to the principal thereof, including the first discount; and as a new note was executed every ninety days for the aggregate indebtedness and discounted afresh, there should be quarterly rests in the computation of the interest to ascertain the amounts to be credited.

6. **Rents Under Lien, How Applied.**—The rents of Johnston's building were also mortgaged to secure the senior debts; but he remained in possession of the property, and applied the rents to the payment of his unsecured indebtedness. This he might do, as he was in possession and had the right of disposition thereof until possession was taken under the deed of trust; but after a receiver was appointed the rents should have been applied to the extinguishment of the lien on the property and rents.

ON MOTION FOR REHEARING.

7. **Liabilities of Parties Fixed.**—Upon re-examination found, that there is sufficient data by which to arrive at the amount that should be credited on the

several notes for payments thereon of usurious interest. These amounts are stated, the liabilities of each of the parties fixed, and judgment here rendered, without prejudice to the right of Mrs. Martin, by proper proceeding, to have rents accumulated in the hands of the receiver applied to the satisfaction of that portion of this judgment adjudged to be a superior lien to hers.

APPEAL from Galveston. Tried below before Hon. W. H. STEWART.

*W. B. Lockhart* and *John W. Goodwin,* for appellant, Mrs. Martin.

1. No right of action can be maintained for a debt nor foreclosure had of liens given to secure the same, in the courts, when the debt is barred by the statute of limitation. Fievel v. Zuber, 67 Texas, 275; Goldfrank v. Young, 64 Texas, 432.

2. No admission of the debt, no account or contract, by the debtor or mortgagor subsequent to the junior mortgage or trust deed, duly recorded, could have any force or effect whatever against the latter, nor extend limitation. Gillum v. Collier & Richardson, 53 Texas, 592; Wofford v. Unger, 55 Texas, 480; Trust Co. v. Coreit, 29 Barb., 435; Schumacker v. Sibert, 18 Kans., 104; Larthel v. Hogan, 1 La. Ann., 330; Lord v. Morris, 18 Cal., 490.

3. Mrs. Martin has a right to plead any substantial defense that could have been pleaded by Johnston. Arledge v. Hall, 54 Texas, 402; Burks v. Watson, 48 Texas, 107.

4. The junior mortgagee, in relation to the prior mortgagee, holds the property in the light of a surety, and is entitled to all the rights and protection of a surety as to such property; and therefore the extension of the notes by the Lasker Real Estate Association, granting even that it was a valid holder of them, discharged their liens upon the Johnston property as to this executrix. Ins. Co. v. Turnley, 61 Texas, 370; Bayl. on Sure., 490–494; Kyle v. Davis, 20 Wis., 568; Leston v. Picketts, 24 Wis., 346; Niemcewiz v. Cohn, 3 Paige, 641; Avenil v. Taylor, 4 Seld., 51; Haberton v. Bennett, Beat. Ch., 386; Will. Eq. Jur., 113.

5. The agreement of plaintiff and James Johnston, evidenced by the promissory note of Johnston to plaintiff for $5500, dated January 1, 1887, in which Johnston hypothecates with plaintiff, as collateral to secure his indebtedness to it, the three promissory notes upon which plaintiff is endeavoring to recover in this action, having been executed subsequent to and as a consummation of all their prior negotiations, it must be conclusively presumed, as to a subsequent valid lien holder, that the notes had therefore been paid by or for Johnston, and that the transaction as between him and plaintiff was a renewal only of the notes and their liens for the purposes of the hypothecation, and Johnston and plaintiff had then no power whatever to deprive this executrix, whose rights had accrued, of the full legal effect of such payment. Boone on Mort., sec. 156; Jones on Mort., secs. 943, 944; 2 Dan. on Neg. Inst., sec. 1238; Burr v.

Smith, 21 Barb., 262; Hartshorn v. Brace, 25 Barb., 128; Eastman v. Plumer, 32 N. H., 238; Lancey v. Clark, 64 N. Y., 209; Chester v. Dorr, 41 N. Y., 279; Gordon v. Wansey, 21 Cal., 77; French v. Jarvis, 29 Conn., 347; Davis v. Miller, 14 Grat., 1.

*Scott, Levi & Smith*, for appellee.—1. The court did not err in foreclosing the lien on the Johnston building for the balance due on the notes mentioned in these assignments of error, because said notes were not barred by limitation at the date of the institution of this suit, nor were the debts and lien invalid against said appellant Mrs. Mary A. Martin, executrix. Ware v. Bennett, 18 Texas, 794; Trotter v. Hughes, 62 Am. Dec., 137; Klapworth v. Dressler, 78 Am. Dec., 69, and notes on 73, 75, 78, 84, 86–88; Belmont v. Coman, 78 Am. Dec., 213, and notes; Ross v. Worthington, 88 Am. Dec., 95; Abell v. Coons, 68 Am. Dec., 229; Burr v. Beers, 80 Am. Dec., 327.

2. The rents of the building were a fund upon which said appellant had no lien, and in which she had no interest or estate; and so far as they were concerned, the debtor, Johnston, could dispose of them as he pleased, and even give them away, in the absence of fraud as to creditors generally, and knowledge thereof and participation therein by this appellee.

3. The plea of usury, upon which alone the application of the rents as actually made by Johnston, the bank, and Brooke Smith can be set aside and revised, was a personal privilege of Johnston, who alone was interested therein; and appellant Mrs. Martin, having no interest therein, was not entitled to have such application revised or corrected as against the appellee, who was no party to the usurious transaction complained of, nor cognizant thereof.

4. Though for part of the debt the bank had a lien on the rents as well as the corpus of the property, it was competent for the bank to waive this lien, and by agreement with Johnston, the only other party interested therein, to apply them otherwise, as they were in fact applied to other indebtedness owing by Johnston to the bank, as well as to interest, usurious though it may have been. Jones on Mort., sec. 670; Murray v. Judson, 59 Am. Dec., 517; Curtis v. Leavitt, 17 Barb., 350; Proctor v. Marshall, 18 Texas, 63–66, and cases cited; Stephens v. Muir, 8 Ind., 352; 7 Am. Dec., 263, cases cited in note; 55 Am. Dec., 398, cases cited in note; 3 Pome. Eq. Jur., sec. 1419, and note 1.

GARRETT, Chief Justice.—This action was brought by the appellee, the Lasker Real Estate Association, in the District Court of Galveston County, against James Johnston, for debt and to foreclose certain liens therefor. Appellant M. A. Martin was made a party defendant, as executrix of W. H. Martin, deceased, who had a junior lien.

The indebtedness sued on grew out of an indebtedness of the said James

Johnston to the First National Bank of Brownwood, which had been trans-ferred to plaintiff by said national bank and one Brooke Smith, the cashier of said bank.   It arose in this way:

James Johnston bought the lot of land upon which the liens are sought to be foreclosed from Coggin & Parks, and in part payment thereof exe-cuted to them his promissory note, with vendor's lien on the land, for the sum of $465.60, dated October 7, 1884, payable on demand to the order of said Coggin & Parks, with 12 per cent interest per annum from the date of the note until paid, and 10 per cent attorney fee if collected by law.   He erected on said lot a two-story stone building.   This note Cog-gin & Parks transferred to said Brooke Smith without recourse on them.

Afterwards, on March 7, 1885, Johnston executed to William Cameron & Co. his promissory note for $2010, payable to their order on or before December 7, 1885, with 12 per cent interest, and in order to secure the same executed a deed of trust to the defendant W. B. Eskridge upon the lot of land conveyed to him by Coggin & Parks.   This note William Cameron & Co. endorsed, without recourse, to said Brooke Smith.

On October 17, 1884, the said Johnston, in consideration of borrowed money, executed his note to the First National Bank of Brownwood for the sum of $3000, and in order to indemnify the said Brooke Smith, who signed said note with him as surety, Johnston executed and delivered to said Smith his promissory note of the same date for the sum of $3500, payable on demand after date, waiving grace and protest, to the order of said Smith, with 12 per cent interest and 10 per cent attorney fee, secured by a deed of trust upon the same property.   This note was endorsed by the said Brooke Smith, in blank, and delivered by him to the bank as collateral to the said note for $3000.

Johnston was then indebted to the bank upon the Coggin & Parks ven-dor's lien note, the William Cameron & Co. note, and the $3000 note for which the note and deed of trust for $3500 had been executed as indem-nifying security, and in other sums of money not secured by lien.   The deed of trust for the $3500 note expressed also a lien on the rents of the Johnston building, in addition to the property itself.   For this total in-debtedness Johnston executed to the bank his note due at ninety days, which included a discount at the rate of 18 per cent per annum; and at the end of every ninety days a new ninety days note was executed and discounted at the same rate for the total indebtedness then due.   The bank collected the rents of the building as they fell due, and applied them to the note then in force representing the aggregate indebtedness, treating and holding the lien notes as collateral security for whatever balance Johnston should owe.

On December 30, 1886, there was a balance of $5500 due the bank, which Johnston desired to have extended.   Plaintiff agreed to take up

the indebtedness and extend time, and Johnston executed and delivered to it a note for the full amount, dated January 1, 1887, payable to the order of plaintiff eighteen months after date, with interest at the rate of 12 per cent per annum, payable semi-annually, in advance, and 10 per cent attorney fee if placed in the hands of an attorney for collection. This note was in accordance with a written agreement, dated December 30, 1886, and recited that the other notes were held by and hypothecated to plaintiff as collateral security for its payment. Plaintiff paid the indebtedness to the bank, and the bank and Brooke Smith, by an agreement in writing, transferred the above described lien notes to plaintiff, reciting that there was yet due on the Coggin & Parks note $400, on the Cameron note $2000, and on the Brooke Smith $3500 note $3100, making a total of $5500, and warranted that said amounts were the true amounts due and unpaid, and that the liens had never been released; but as to further liability without recourse. To the above mentioned agreement was annexed an agreement by Johnston, recognizing the validity of the notes and the liens to secure them, and in consideration of the extension of time, that he would keep the property insured, pay principal and interest in Galveston, and waived the statute of limitations.

The junior lien of appellant M. A. Martin's testator, W. H. Martin, was a deed of trust executed upon the same and other property, June 24, 1885, to secure the note of said Johnston of that date for $6295.45, and conveyed the property to the defendant Henry Ford as trustee, "subject, however, to a lien in favor of said First National Bank for about $3500, and another lien in favor of William Cameron for about $2025."

Plaintiff in its petition set out the several lien notes and the facts leading to the execution of the note for $5500, which, it averred, was given to evidence in brief form the terms of the agreement dated December 30, 1886, and was for the same indebtedness and none other than that evidenced by the three promissory notes above described.

Mrs. Martin pleaded as a defense against said notes the statute of limitations and usury. As a junior encumbrancer of the lands, she could avail herself of, and set up as against the indebtedness sued on, whatever defense Johnston, the maker of the notes, had, although he was a party to the suit and suffered judgment by default. Arledge v. Hail, 54 Texas, 401; Burks v. Watson, 48 Texas, 110. If the limitation had run against the lien notes, Mrs. Martin could have availed herself of it and pleaded it in bar of a recovery; but the agreement of December 30, 1886, made by Johnston with the Lasker Real Estate Association for the purpose of having his debt to the bank taken up, acknowledged the validity of the three notes and agreed to pay them, waiving the statute of limitations. This agreement was made after the deed of trust in favor of W. H. Martin had been executed and recorded, and the question arises whether Johnston, by a promise made subsequent to his act creating the junior encum-

brance on the lot, could renew his obligation on the notes so as to deprive the junior encumbrancer of the defense of limitation. That he could, was the effect of the decision in Ware v. Bennett, 18 Texas, 794. Such is also the great weight of authority. Wood on Lim., sec. 230, and note 2; Ang. on Lim., sec. 460; Heyer v. Pruyn, 7 Paige, 465; Hughes v. Edwards, 9 Wheat., 497. It is also competent for the mortgagor to arrange for an extension of the mortgage debt, and an agreement to extend the time of payment will not discharge the lien of the mortgage as to subsequent encumbrancers. Whittacre v. Fuller, 5 Minn., 508.

It was shown by the evidence, that the balance of indebtedness taken up by the plaintiff, and for which Johnston executed his note for $5500, was ascertained after the application of the rents of the building, which were collected by the bank, to the payment of usurious interest. Mrs. Martin pleaded usury, and contends that all interest should be forfeited, and the rents should be applied to the principal of the lien notes; first, to the note for the amount of indebtedness represented by the $3500 note and deed of trust, which was also a lien on the rents, and then to the other notes.

There are many authorities which hold that usury is a defense so strictly personal that a third party can not avail himself thereof; but it seems that " the doctrine more generally adopted is, that not only the mortgagor, but any person who is seized of his estate and vested with his rights, unless he has assumed the payment of the mortgage, may interpose this defense, although a mere stranger can not." 1 Jones on Mort., sec. 644. A junior mortgagee may set up usury in the mortgage. Id., and authorities cited in note 9.

When a purchaser of the equity of redemption assumes the payment of the mortgage, it becomes a part of the consideration paid for the land, and it is immaterial with such purchaser whether there is usury in the mortgage or not. The language used in the Martin deed of trust, that it is taken subject to the liens in favor of the Brooke Smith and Cameron & Co. notes, is nothing more than a mere acknowledgment of notice of these liens, and does not affect the holder of the Martin encumbrance with any obligation not to set up any lawful defense which Johnston himself may have then had or subsequently acquired to the notes.

We do not think, however, that the Coggin & Parks vendor's lien note nor the William Cameron & Co. note were tainted with usury. It was only subsequently to their execution, and after they had been transferred to the bank, that the question of usury arises, and then usurious interest was paid and taken upon sums represented by them as the amounts paid for them. With reference to the amounts represented by these notes, we do not think the entire amount of interest should be forfeited; only the excess of interest over the amount called for in their face should be credited on the principal. The note for $3500 was executed to indemnify

the said Brooke Smith as an endorser of a note executed by the said Johnston to the bank for $3000. As the creditor of Johnston, with Smith as security, the bank was entitled to whatever security Smith had, and when Smith endorsed the note for $3500 to the bank, it became in the hands of the bank merely collateral security for the note of Johnston to the bank for $3000. The latter note was discounted to the bank for $2865, being at the rate of 18 per cent per annum, a rate which was usurious, so the contract was a usurious contract. All payments of interest on this note, whether by way of discount or otherwise, should be applied to the principal thereof, including the first discount. In the judgment below the court seems to have only allowed the excess of interest as a credit on the principal, which was error. As a new note was executed every ninety days for the aggregate indebtedness, and discounted afresh, it follows that there should be quarterly rests in the computation of the interest, so as to ascertain the amounts to be credited, and we are not in the possession of sufficient data to enable us to arrive at the amount. It may be that the books of the bank will show the actual amounts received as interest.

Johnston remained in the possession of the property, and in addition to the payment of interest applied the rents to the extinction of his unsecured indebtedness. Appellant contends, that as the deed of trust for the $3500 note was also a lien on the rents, they should have been applied entirely to the extinction of the lien. This seems to be otherwise. 1 Jones on Mort., sec. 670. Johnston remained in possession of the rents as of the other property included in the deed of trust, and had the right of disposition thereof until possession was taken under the deed of trust. But when the receiver was appointed and the property taken charge of by the court, the rents should then have been applied at least to the extinguishment of the lien on the property and rents to secure the note for $3500; hence the court erred in adjudging that the rents accumulated and to accumulate in the hands of the receiver after his appointment should be applied to the payment of that portion of the plaintiff's judgment which had been postponed to the appellants' lien.

We do not think that it is necessary to notice the eighth and ninth assignments of error, for the reason that no such affirmative relief was properly sought, even if there should be no other reason.

The judgment of the court below will be reversed and the cause remanded for another trial in accordance with the opinion herein expressed.

*Reversed and remanded.*

Delivered January 26, 1893.

<hr>

ON MOTION FOR REHEARING.

GARRETT, Chief Justice.—A careful examination of the motion for a rehearing in this case, submitted by the appellee, the Lasker Real Es-

tate Association, has convinced us that we were in error in holding in the disposition of this case made at a former day of the term that we were not in possession of sufficient data to enable us to arrive at the amounts that should be credited on the several notes for payments thereon of usurious interest.

Counsel for appellee's motion have furnished us with a computation which appears to be correct, whereby all sums paid as usurious interest are ascertained and applied to the principal of the notes, and the total amount to be preferred over the lien of Mrs. Martin, executrix, is shown to have been on the date of the judgment in the court below, March 29, 1890, the sum of $4054.74, which should bear interest from that date at the rate of 12 per cent per annum; and the balance for which judgment should be rendered against the defendants, Brooke Smith and the bank, is $1937.76.

The judgment rendered at a former day of this term, reversing and remanding this cause, will be set aside and judgment now here rendered as herein indicated; without prejudice, however, to the right of Mrs. Martin by proper proceeding to have the rents which may have accumulated in the hands of the receiver applied to the satisfaction to that portion of the judgment here rendered, adjudged to be a lien superior to hers. The motion of Brooke Smith and of the bank for rehearing is overruled.

Delivered March 6, 1893.