## PECOS MERCANTILE CO. v. McKNIGHT et al. (No. 1516.)*

(Court of Civil Appeals of Texas. El Paso. Nov. 15, 1923. Rehearing Denied Dec. 13, 1923.)

1. **Limitation of actions ⚖➤12(1)—Junior lien holder may plead limitation as against prior lien.**

In suit by a junior lien holder to recover on its debt and foreclose its lien, Rev. St. arts. 5694, 5695, which create a presumption of payment, and destroy the lien of a senior lien holder, are available, and inure to plaintiff's benefit.

2. **Constitutional law ⚖➤171—Vendor and purchaser ⚖➤248—Act barring remedy to vendor not invalid as impairing contract.**

Rev. St. art. 5694, prescribing when the right to recover land under a vendor's lien shall be barred, in so far as it bars the assertion of any right under a deed and notes in a proceeding in court to foreclose the lien or to recover back the land under reserved superior title, is not unconstitutional as impairing the obligation of the contract.

3. **Estoppel ⚖➤103—Junior lien holder not estopped by admission of priority from asserting defenses subsequent thereto.**

Notwithstanding that, at time of the execution of a deed of trust to a junior lien holder, he had knowledge of a prior vendor's lien against the land, and took deed subject thereto, such admission of priority did not estop him from relying on and asserting defenses arising subsequent thereto.

Appeal from District Court, Reeves County; Chas. Gibbs, Judge.

Suit by the Pecos Mercantile Company against Robert L. McKnight and others. From a judgment subordinating plaintiff's lien to that of defendant Waddell, plaintiff appeals. Reversed and rendered.

J. A. Drane and H. G. Russell, both of Pecos, for appellant.

Lee Monroe, of Topeka, Kan., and W. W. Hubbard, of Ranger, for appellees.

HIGGINS, J. The material facts pertinent to this appeal are as follows:

By deed dated December 31, 1909, recorded December 31, 1913, the appellee Waddell conveyed to R. L. McKnight two tracts of land in Ward county containing 80 acres each, and in part payment therefor McKnight executed seven promissory notes in favor of Waddell, aggregating $8,000 in amount and payable respectively on November 1st, in the years 1910 to 1916, both inclusive. In the deed it was "expressly agreed and stipulated that the vendor's lien is retained against the above-described property, premises, and improvements until the above-described notes and all interest thereon are

fully paid, according to their face and tenor, effect, and reading, when this deed shall become absolute."

On October 9, 1913, McKnight executed a deed of trust to A. G. Taggart, trustee, covering said premises to secure the payment of four notes executed by himself and P. O. Benjamin to the order of the appellant, Pecos Mercantile Company, in the sum of $1,000, each, dated September 16, 1913, due May 1, 1914. The instrument contained this further provision:

"It is agreed that this instrument shall extend to and cover, as collateral, any further and other indebtedness that I may become due the Pecos Mercantile Company, either evidenced by note or open account."

On December 20, 1917, the Pecos Mercantile Company and McKnight signed, acknowledged, and placed of record an instrument reciting the execution of above-mentioned deed of trust and its provisions; that McKnight had assumed the payment of said indebtedness, and upon that date had executed seven promissory notes for the total amount of said indebtedness, including advances to McKnight and Benjamin since September 16, 1913; the first six of said notes being for $1,000 each, and the seventh being for $886.92, all payable 180 days after date, and agreeing that the maturity of the indebtedness should be extended for 180 days from date, to wit, June 18, 1918, which last-mentioned date, it was agreed, should be the new maturity of the indebtedness and mortgage lien. The said McKnight further agreeing to promptly pay off and discharge said indebtedness at the maturity date.

Subsequently the Pecos Mercantile Company filed this suit against McKnight, Waddell, and others not necessary to mention, to recover of McKnight the amount due upon the last above-described notes and for foreclosure of the deed of trust lien against him and Waddell; the petition setting up the facts as above detailed.

As against Waddell it was averred that at the time of the execution of the deed of trust and of the extension agreement the land was incumbered by the vendor's lien notes in Waddell's favor, but that all of said notes became barred by the four years statute of limitation, and on November 21, 1920, the vendor's lien held by him expired and ceased to exist, and the plaintiff's lien became the first and only lien upon the land, and judgment was sought establishing its debt and lien as a first lien.

Waddell answered, excepting to that portion of the petition directed against him upon the ground that the plea of four years statute of limitation was personal to the maker of the notes held by him, and could not be made by the plaintiff, and was in

sufficient to show a lien in favor of the plaintiff superior to the vendor's lien notes held by him, which exceptions were overruled by the court. Answering, he set up the execution of the notes by McKnight in payment for the land; admitted a number of payments thereon, and claimed a balance due of $————, as a first lien upon the land, superior to the claim of plaintiff.

The defendant Waddell also set up a cross-action against McKnight, and prayed for judgment for the balance due upon his note, and that his lien be established as the first lien upon the premises, superior to that of the Pecos Mercantile Company. McKnight made no answer.

Upon trial before the court judgment was rendered in favor of the plaintiff and Waddell against McKnight for the respective amounts due them, together with foreclosure of their asserted liens, priority being accorded to the lien of Waddell. From this judgment the Pecos Mercantile Company appeals complaining of that portion of the decree subordinating its lien to that of Waddell.

The appellant relies upon articles 5694, 5695, R. S., and claims by virtue thereof its lien is entitled to priority.

[1] In support of the judgment, appellee asserts that article 5694 is not a statute of destruction, but merely of limitation; as such is governed by the rules applicable to other limitation statutes; that the defense of limitation against the notes is personal to McKnight and those in privity with him; that McKnight has failed to claim the defense, and appellant has no such privity of estate as would authorize it to plead the same.

If it be conceded that article 5694 is simply a statute of limitation then it may be that appellant as a junior mortgagee is not in position to plead same against the prior lien of appellee. It has been held by Courts of Civil Appeals that a junior mortgagee may avail himself of the defense of limitation against a debt secured by prior mortgage which is sought to be foreclosed. Scott v. Sloan, 3 Tex. Civ. App. 46, 23 S. W. 42; Johnson v. Lasker, etc., 2 Tex. Civ. App. 494, 21 S. W. 961; Moore v. Porter (Tex. Civ. App.) 138 S. W. 426. But the view that a purely limitation statute is not available to a junior mortgagee would perhaps follow from what was said in Columbia, etc., v. Strawn, 93 Tex. 48, 53 S. W. 342. That case did not present a contest between senior and junior incumbrancers, but was an effort by a lien holder to plead limitation against a co-ordinate equal lienor. The facts in that case were that Strawn, the holder of two of a series of three purchase-money notes, sought to plead limitation against the third note held by the Columbia Company. In that respect the case differed from the instant one, but, in denying to Strawn the right to assert the bar of the statute of limitation against the holder of the other note, the court said it was not inclined to extend further the rule announced in previous decisions of that court allowing a purchaser of land incumbered by lien to secure a debt to assert the statute of limitation against the holder of the lien. The inference from the opinion is that a junior incumbrancer cannot plead the statute of limitation.

The law relied upon by appellant was enacted subsequent to the decision in the Strawn Case, but, in the recent case of Ringle v. Waggoner (Tex. Civ. App.) 238 S. W. 236, the Amarillo court held that the defense of limitation against purchase-money notes was not available to junior contract and judgment lien holders. This ruling, however, appears not to have been necessary, because it was also held that the purchase-money notes had been extended by a sufficient contract in writing.

Appellee in this connection also relies upon that portion of the opinion in Poythress v. Ivey, 228 S. W. 157, by the Commission of Appeals, which says:

"There is nothing in the petition evidencing a relationship between Mattie Jackson and her vendee on the one part, and Evans on the other, authorizing her to urge the bar of the statute against the debt due by Evans to Poythress. The original debt secured by the deed of trust having been treated as continuing by the original debtor, and no plea of limitation by exception or otherwise having been by him, or those in direct privy with him, interposed, the lien of the trust deed follows the debt.

"We are not to be understood as holding that there may not exist circumstances under which Mattie Jackson and her vendee might interpose the plea in order to protect her estate against the lien of the deed of trust, but the petition does not disclose such rights."

In that case, however, the question arose upon the sustaining of a special exception urging limitation by Mattie Jackson and her vendee to the petition. These parties had been sued "as asserting some suit of claim to the lots against which the liens were sought to be foreclosed." It is thus apparent that the petition did not disclose the character of the claim made by those parties, and their exception was not well taken in the absence of allegations showing them to be in privity with Evans.

We do not regard the authorities mentioned as foreclosing against the appellant the question of its right to avail itself of the statute now in force, because it is something more than a mere statute of limitation, and from the recent decision by the Supreme Court in Cathey v. Weaver, 111 Tex. 515, 242 S. W. 447, it is evident that the Supreme Court does not regard this statute as being unavailable to a junior mortgagee.

That case and the more recent case of Bunn v. City of Laredo, 245 S. W. 426, by the Commission of Appeals supports the view that, not only is it a statute of limitation barring all remedy in the courts, but, in all suits to recover the land or to enforce the lien brought more than four years after the maturity of the notes, a conclusive presumption of fact arises that the notes have been paid and the lien has ceased to exist. These latter features of the act are inapplicable to a purely limitation statute. They operate as a rule of evidence, and destroy the lien.

The last-mentioned case·is relied upon by appellee in support of its contention that the act is not destructive of any substantial right of the vendor, but the opinion expressly recognizes that the statute does have that effect upon the lien as is shown by this language:

"It may be conceded that the vendor's lien was by the express language of this statute destroyed when the bar of the statute was complete. But it is a significant fact that, while the act specifically refers to the superior title as distinguished from the vendor's lien, it does not attempt to affect the superior title other than to bar the owner thereof from the right to assert it in a suit to recover the land. * * *

"Nor do we think the language, 'the purchase money therefor shall be conclusively presumed to have been paid," militates against this conclusion; for this language is immediately followed by, 'in any suit to recover such land or to enforce a lien thereon.' The effect of the latter quotation is to expressly limit the presumption of payment to suits to recover under the superior title or to enforce the lien."

In the Bunn Case the vendor had expressly retained a lien; the purchase money had not been paid, and subsequent to the bar of limitation the vendor rescinded without court action, and resumed possession. Thereafter the assignee of the original vendee conveyed by quitclaim deed to Bunn. Bunn sought to recover the land from the city. The distinguishing feature of that case is that the original vendor had rescinded the contract without resort to the courts, as he had the right to do under our decisions, and had resumed· possession, whereas, in the instant case, the vendor has not done so, but has sought to recover upon the notes and foreclose his lien. The ultimate ruling in the Bunn Case amounts to no more than a holding that the amendment of 1913 does not destroy the superior title reserved in the vendor as distinguished from the vendor's lien and "the only effect of that act as 'regards the superior title was to bar the right of action thereon when asserted in the courts," and that where the vendor in an executory contract arising by virtue of an expressly retained vendor's lien has rescinded the contract and presumed possession under ·circumstances authorizing such rescission, the assignee of the original vendee cannot. sue for and recover the land.

Conceding, though, that appellant, as a lien holder, cannot avail itself of that portion of the act which is purely in the nature of a limitation statute, we are nevertheless of the opinion that in this suit, wherein appellee is seeking to recover upon its debt and foreclose its lien, those portions of the act which create the presumption of payment and destroy appellees' lien are available, and inure to the benefit of appellant. A mortgagee acquires a vested and valuable right and in our opinion 'the Legislature intended that those provisions of the law at least should be available to such lienors. There is direct evidence of this purpose in the emergency sections of the last two amendments of the original act. In the emergency section of the amendment of April 3, 1913, it recites "that there are a great many land titles in this· state that are clouded by reason of vendor's lien. and deed. of trusts appearing on the records apparently unpaid." See Acts 33d Leg. Reg. Sess. p. 251, § 4. In the last amendment (Acts 33d Leg. Ex Sess. [1913] c. 27, § 2) it recites:

"The fact of the near approach of the end· of this session and that great confusion exists by reason of the form of said· section 5695, as heretofore amended in the preparation of deeds of trust and extensions of ·liens *and in the closing of loans thereon*, .creates an emergency. * * * *" (Italics ours.)

The first quoted section indicates that the law was intended to protect any one acquiring a beneficial interest in the land by contract with the owner, and the italicized portion of the last amendment shows that it was intended to protect· those making loans upon the land.

This conclusion is strengthened by the ruling of the Supreme Court in the Cathey Case, supra. That case involved the constitutionality of a portion of article 5695 relied upon by the holder of purchase-money notes, and· such portion was held unconstitutional. The facts were that Cathey conveyed to McClain, expressly reserving a vendor's lien to secure a purchase-money note given by McClain, maturing October 1, 1907. McClain conveyed to Dodson, who gave a deed of trust to Weaver on February 13, 1911, to secure a note of even date due November 1, 1914. Dodson then sold to Bailey. On December 2, 1914, Weaver filed suit upon the note and to foreclose making Cathey. a party. The latter answered on December 14, 1914, and sought to recover upon the note held by him and to foreclose his' vendor's lien as superior to the deed of trust held· by Weaver. In the alternative, he sought a decree establishing and fixing his superior title to the land as a. vendor thereof.

Weaver's position and pleadings were that Cathey's note, his vendor's lien, and his right to recover 'the land by virtue of any superior title were barred by limitation. Cathey's contention was that his right to foreclose his lien had been extended by the amendments of 1913. The ruling of the court was adverse to the contention of Cathey with respect to the constitutionality of that portion of the last amendment, which was relied upon by him as extending the time within which he might sue. From the opinion in the case by the Court of Civil Appeals (193 S. W. 490), it will be seen that the other defendants in the case were Dodson, Bailey, and Koonce, the trustee in the deed of trust, and none of them answered. The facts were therefore parallel to the present one, and having overruled Cathey's contention that the time within which he could sue had been extended by a valid legislative act, the Supreme Court affirmed the judgment of the lower courts, which established the priority of Weaver's deed of trust to the rights of Cathey. That judgment could not have been properly affirmed if Weaver, a junior lien holder, was not entitled to plead and avail himself of the provisions of article 5694.

As applied to the facts of that case, Chief Justice Cureton ·evidently regarded the holder of the lien created by deed of trust as 'protected by the act in question. It is therefore held that the court erred in awarding priority to appellees' lien.

[2] Another proposition relied upon by appellee in effect is that under his deed to McKnight the superior title remained in him, and article 5694, if applicable to an executory contract of the kind evidenced by his deed, is unconstitutional, because it impairs the obligation of the contract between appellee and his vendee McKnight.

The validity of this law against the objection urged has been several times upheld, in so far as it bars the assertion of any right under the deed and notes in a proceeding in court to foreclose the lien or recover back the land under the reserved superior legal title. City of Laredo v. Salinas (Tex. Civ. App.) 191 S. W. 190; Key v. Jones (Tex. Civ. App.) 191 S. W. 736; Quick v. Anderson (Tex. Civ. App.) 232 S. W. 536; Bean v. J. I. Case, etc. (Tex. Civ. App.) 221 S. W. 634.

The appellee relied upon his lien, and sought to foreclose, the same, and the authorities cited foreclose against him the question of the validity of the law barring the remedy which he sought.

The case presents no issue of a right asserted and relied upon by virtue of a rescission of the contract independent of court action and possession resumed such as arose in Bunn v. Laredo, supra. In such a state of facts the validity of the act does not

arise, because the Bunn Case holds that the law does not apply.

[3] Another contention made by appellee is that appellant is precluded from raising the issue of limitation, because of an admission—

"That at the time of the execution and delivery to plaintiff of the deed of trust on said water tracts Nos. 11 and 12, set forth in said petition, plaintiff had both constructive notice and actual knowledge of this defendant's said vendor's lien against said premises and of the fact that it was unpaid as hereinbefore alleged, and it took and accepted its said deed of trust, subject to and as a second and inferior lien against said tracts."

This admission was but an acknowledgment of notice of appellees' lien, of its then priority and validity, but it in nowise operated to estop appellant from relying upon and asserting any defense arising subsequent to the time it acquires its lien. Johnson v. Lasker Real Estate Ass'n, 2 Tex. Civ. App. 494, 21 S. W. 961; Jones on Mortgages (4th Ed.) § 595.

The authorities cited by appellee in this connection were based upon very different facts, and have no application.

The judgment will be reversed and rendered so as to award priority to appellant's lien.

The record discloses that appellant also obtained a judgment of foreclosure upon a tract of land in Reeves county. The Reeves county land is ordered sold first.

Reversed and rendered as indicated.