Henrietta ALLEE, et al., Petitioners,

v.

Albert BENSER, Respondent.

No. C–6810.

Supreme Court of Texas.

Nov. 30, 1988.

Rehearing Denied Nov. 29, 1989.

Robert S. Leithiser, Leithiser, Palmer & Allen, Dallas, for petitioners.

Larry Feldman, Sol Ballas, James L. McNees, Jr., McNees & McNees, Dallas, for respondent.

## OPINION

RAY, Justice.

This is a usury case presenting the question whether a junior lienholder has standing to assert a usury claim of the borrower to defeat the senior lien. After both parties moved for summary judgment, the trial court rendered judgment for the junior lienholder, holding that the senior transaction was usurious as a matter of law and the junior lienholder had standing to assert the usury claim. The court of appeals, divided as to the reason for its judgment, reversed and remanded. 735 S.W.2d 566. We affirm the judgment of the court of appeals.

The borrower is Thomas E. Morris. Morris executed and delivered a note and deed of trust to Metropolitan National Bank, and Albert Benser guaranteed payment of the note to the bank. When Morris defaulted the bank made demand on Benser under his guaranty, and Benser paid the balance due. Metropolitan Bank then assigned the note and deed of trust to Benser. Benser instituted foreclosure proceedings under the deed of trust, but ceased the proceedings on August 31, 1984, when he and Morris reached agreement on a renewal and extension of the loan.

On September 24, 1984, Morris executed and delivered a note and deed of trust on the same property to Independence Bank.

Henrietta Allee, Robert E. Myrin, Joseph E. Caperone, Jess S. Epps, Jr., and Donald E. Davis (collectively the "Allee parties") guaranteed payment of this second note. Morris defaulted and the Allee parties paid the note, after which Independence Bank assigned its note and deed of trust to the Allee parties.

Subsequently, Morris was in default both on the renewal to Benser and the Independence Bank note. Both Benser and the Allee parties instituted foreclosure proceedings on the property. The Allee parties sued Benser for a declaration that his lien was extinguished. Tex.Civ.Prac. & Rem. Code Ann. § 37.004(a) (Vernon 1986). The Allee parties alleged that a payment from Morris to Benser as part of the renewal and extension agreement was "interest," which made the total interest under the renewal and extension agreement more than twice the amount allowed by law, requiring Benser to forfeit principal and interest as a usury penalty. Tex.Rev.Civ. Stat.Ann. art. 5069-1.06(2) (Vernon 1987). Benser defended on the grounds that the Allee parties lacked standing to assert the usury penalty because it was personal to the obligor, and that the renewal was not usurious. We address the standing issue and, for the reasons given below, do not address whether summary judgment was proper on the usury question.

The Allee parties admit the general rule is that a usury cause of action is personal to the obligor. They argue that a junior lienholder is an exception to that general rule. They cite two cases decided in the 1890's to support their argument. Both cases hold that a junior lienholder may assert the voidness of a usurious contract against the senior lienholder. The first case is *Maloney v. Eaheart*, 81 Tex. 281, 16 S.W. 1030 (1891), which held that the purchaser under a junior mortgagee's foreclosure sale, as one who has the right to pay off the debt that creates the prior encumbrance, has the right to discharge such incumbrance by paying only so much of the debt as was recognized to be valid. The second case is *Johnson v. Lasker Real–Estate Ass'n*, 2 Tex.Civ.App. 494, 21 S.W. 961 (Tex.Civ.App.—Galveston 1893,

no writ), which held that a junior mortgagee may credit payments of usurious interest against the principal debt secured by the senior mortgage.

■ Benser relies on this court's decision in *Houston Sash & Door Co. v. Heaner*, 577 S.W.2d 217 (Tex.1979), holding that the language of article 5069-1.06 that the violator "shall forfeit *to the obligor*" the usury penalties, meant the assertion of the remedy was "restricted to the immediate parties to the transaction." *Houston Sash*, 577 S.W.2d at 222. The opinion cited with approval the holding that usury was a personal cause of action of *Micrea, Inc. v. Eureka Life Ins. Co.*, 534 S.W.2d 348, 354 (Tex. Civ.App.—Fort Worth 1976, writ ref'd n.r. e.). Because both the constitutional and statutory framework of the usury laws have changed since the *Maloney* decision, we hold that the type of "voidness" the Allee parties attempt to assert is not what this court held in *Maloney* they would have standing to assert. We thus reaffirm this court's holding in *Houston Sash* that the penalties provided under article 5069-1.06 are personal to the obligor and may not be asserted by the Allee parties. We begin with an examination of the constitutional provision prohibiting usury.

During Reconstruction, one popular economic theory advocated that restrictions on interest rates produced a shortage of capital and consequently produced unnecessarily high costs for credit. Texas' Reconstruction government was so influenced by the theory that in the Constitution of 1869 (article XII, § 44), it abolished usury laws and prohibited the legislature from enacting laws limiting the amount of interest that could be charged for the use of money. Tex. Const. art. XVI, § 11, interp. commentary (Vernon 1955). The gross credit abuses that arose from the absence of usury laws prompted the people to adopt a specific usury prohibition in the Constitution of 1876. *Id.* Article XVI, section 11 of the Texas Constitution (1876) provided:

> The legal rate of interest shall not exceed eight per cent. per annum, in the absence of any contract as to the rate of

interest; and by contract parties may agree upon any rate not to exceed twelve per cent. per annum. All interest charged above this last named rate, shall be deemed usurious, and the Legislature shall, at its first session, provide appropriate pains and penalties to prevent and punish usury.

This court held the constitutional provision as it then existed was self-executing and made illegal and void any contract for a higher rate than twelve percent. *Hemphill v. Watson*, 60 Tex. 679 (1884); *Watson v. Aiken*, 55 Tex. 536 (1881). The legislature enacted statutes in response to the constitutional mandate providing that all contracts for interest in excess of twelve percent were void as to interest, but that the principal debt was not void. Law of August 21, 1876, Ch. 137, § 3, 1876 Tex. Gen.Laws 228, 8 H. Gammel, Laws of Texas 1064 (1898). It was in the context of this constitutional and statutory framework that this court held in *Maloney* that a second lienholder had standing to assert usury to determine the "true" amount of the debt underlying the first deed of trust. As discussed below, the cases held all interest paid on a usurious contract was "void," and was applied to reduce the principal amount of the debt, without regard to the penalties provided by the usury statutes.

In 1891 the voters adopted an amendment to article XVI, section 11 of the constitution. The amended section then provided:

All contracts for a greater rate of interest than ten per centum per annum, shall be deemed usurious, and the first Legislature after this amendment is adopted, shall provide appropriate pains and penalties to prevent the same; but when no rate of interest is agreed upon, the rate shall not exceed six per centum per annum. Tex. Const. art. XVI, § 11 (1891).

The amendment lowered the maximum interest rate to ten percent, but otherwise left the substance of the constitutional provision the same. The provisions of the usury statutes remained substantially the same, ultimately being codified as articles 5071 and 5073 of the Revised Statutes of 1925. Tex.Rev.Civ.Stat.Ann. arts. 5071,

5073 (1925) (repealed 1967). It is instructive to review the case law development under this constitutional and statutory framework to understand why the Allee parties may not assert the *penalty* right they seek of forfeiture of all the principal of the Benser note.

The right to assert a credit against the principal debt for payment of the "void" interest rested on both constitutional and statutory grounds. The legislature ultimately enacted a penalty provision for recovery by the debtor or his legal representative of twice the usurious interest actually paid in a suit brought within two years of the payment. The question then arose whether the remedy of cancellation of principal by application of the interest payments, had been repealed. This court approved a holding that the direct constitutional remedy was not repealed, but that the debtor (as to a particular payment of interest) had to elect whether to have it applied to principal or to collect the usury penalty for it. *Sugg v. Smith*, 205 S.W. 363, 372–73 (Tex.Civ.App.—Austin 1918, writ ref'd). Several alternative remedies were available to the debtor. He could refuse to pay the interest (which was the "void" portion of the contract), but pay the principal debt in installments as provided. *Palmetto Lumber Co. v. Gibbs*, 124 Tex. 615, 620, 80 S.W.2d 742, 745 (1935). The two-year statute of limitations applied only to the penalty provisions of the statute, because the interest portion of the contract was void under the constitution. Thus the debtor could elect to apply all payments made more than two years before the filing of suit to the principal debt, and to recover penalties (then double the amount of interest paid) for the interest payments made within the two-year period. *Adleson v. B.F. Dittmar Co.*, 124 Tex. 564, 568, 80 S.W.2d 939, 941 (1935). Alternatively, the debtor could have the interest paid applied to principal for payments made before the two-year period, and the penalty of twice the interest paid applied to principal for payments made within the two-year period. *Id.* As to interest payments made within the two-year period for which the penalty

was not barred, the debtor had the choice of the two remedies. He could require the reduction of the amount of usurious interest paid from the principal, or by pleading the penalty statute he could sue to recover double the amount of interest paid, but he could not pursue both remedies or blend the two. *Gerard v. National Bond & Mortgage Corp.*, 86 S.W.2d 74, 76 (Tex.Civ. App.—Galveston 1935, writ ref'd). It was the penalty statute, being of a penal nature and thus strictly construed, that the courts held provided a remedy that was *personal to the debtor* or to his legal representatives, according to the specific language of the statute then in force. *Sugg v. Smith*, 205 S.W. at 370. This court has never held that a junior lienholder, or anyone else not directly authorized by the usury statute in force at the time of the decision, had standing to assert the penalty portion of the usury statute.

Both the constitution and the usury statutes read differently now. In 1960 the voters adopted the constitutional amendment to article XVI, section 11 presently in force. It now provides:

The Legislature shall have authority to classify loans and lenders, license and regulate lenders, define interest and fix maximum rates of interest; provided, however, in the absence of legislation fixing maximum rates of interest all contracts for a greater rate of interest than ten per centum (10%) per annum shall be deemed usurious; provided, further, that in contracts where no rate of interest is agreed upon, the rate shall not exceed six per centum (6%) per annum. Should any regulatory agency, acting under the provisions of this Section, cancel or refuse to grant any permit under any law passed by the Legislature; then such applicant or holder shall have the right of appeal to the courts and granted a trial de novo as that term is used in appealing from the justice of peace court to the county court. Tex. Const. art. XVI, § 11.

In 1967 the legislature enacted the current scheme of usury statutes, represented by the various chapters under current article 5069. Although the 1960 constitutional amendment eliminated the term "pains and penalties," the legislature's statutory language and the holdings of this court make it clear that the forfeiture of all principal for so-called "double usury" is a "penalty" as that term was used under the former constitutional and statutory provisions. The statutory heading for article 5069–1.06 is "Penalties," and the double usury provision itself, article 5069–1.06(2), states the lender "shall forfeit *as an additional penalty*, all principal as well as interest" (emphasis supplied). This court's decisions recognized the provision as a particularly severe penalty. *Houston Sash*, 577 S.W.2d at 220.

■ The pleadings of the Allee parties seek to enforce the penalty forfeiture provision. Under the holding of *Maloney* it is only the constitutional voidness that may be asserted by the junior lienholder. Under this court's *Houston Sash* opinion, and under the holdings construing the constitutional and statutory scheme in effect when *Maloney* was decided, the Allee parties lack standing to enforce the penalty forfeiture provision.

The changes in the constitutional and statutory provisions have altered the distinctions for pleading and election of alternative substantive remedies of the prior usury laws. *Wall v. East Texas Teachers Credit Union*, 526 S.W.2d 148, 150–51 (Tex.Civ.App.—Texarkana 1975), *aff'd in part and rev'd in part*, 533 S.W.2d 918, 921–22 (Tex.1976) (expressly approving reasons and holding on the point). Thus the rationale of an older case for why a transaction was not tainted by usury may no longer apply. Nevertheless, during the same term in which this court decided *Maloney*, we held that a subsequent usurious renewal and extension did not taint the original loan and deed of trust with usury, when the original loan was not usurious. *Krause v. Pope*, 78 Tex. 478, 14 S.W. 616, 619 (1890). A literal application of *Maloney* and *Krause* would require that neither the junior lienholder nor the debtor could defeat the senior lien in the present case. We do not expressly overrule either *Malo-*

*ney* and *Krause*. They correctly applied the constitution and statutes then in force. They simply do not apply to the present constitutional and statutory scheme.

 Our holding should not be misconstrued. We do not hold that a junior lienholder has no standing to assert the constitutional voidness of usurious interest. Since a constitutional provision still expressly condemns usury, if the renewal contract were to collect usurious interest, that portion of the contract would be illegal and void. *Tri–County Farmer's Co-op v. Bendele*, 641 S.W.2d 208, 209 n. 2 (Tex. 1982). We do not decide and expressly do not preclude the Allee parties from asserting on remand that constitutionally void usurious interest was collected that must be applied against the principal indebtedness of the note. Some courts have called variations of this theory "common law usury." *See Coppedge v. Colonial Savings & Loan Ass'n*, 721 S.W.2d 933, 938 (Tex.App. —Dallas 1986, writ ref'd n.r.e.); *Commercial Credit Equipment Corp. v. West*, 677 S.W.2d 669, 679 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.). The present state of the Allee parties' pleadings would not allow such a remedy, so we do not decide either whether such a "common law" usury doctrine is viable, or whether the summary judgment evidence established that as a matter of law the payment by Morris to Benser constituted usurious interest because it was a device to evade the usury laws.

We hold that a junior lienholder lacks standing to assert the penalty provisions of the usury statutes against the senior lienholder. We affirm the judgment of the court of appeals which remanded this cause to the trial court for further proceedings.

SPEARS, J., dissents joined by MAUZY, J.

CULVER, J., dissents joined by KILGARLIN, J.

SPEARS, Justice, dissenting.

I respectfully dissent and agree with the dissenting opinion of Justice Culver. If the renewal and extension agreement executed by Benser and the debtor is found to be usurious, it would taint the Benser lien and render the lien invalid. The original indebtedness giving rise to the Benser lien and the subsequent renewal and extension agreement are so interwoven that they must be considered a single transaction. The renewal and extension agreement, by its terms, extends the original notes and deed of trust. Further, Benser applied the payments made by the debtor to the indebtedness as renewed and extended by that agreement.

Had Allee, as a junior lienholder, offered to tender the balance due under Benser's senior lien, Benser would have demanded payment of the full amount owed by the debtor, including the sum remaining unpaid under the renewal and extension agreement. Upon satisfying the Benser lien, Allee would have gained the right to recover the amount she tendered from the debtor. If usury tainted the amount owed by the debtor under the senior lien, the debtor could have asserted usury against Allee and, thereby, invalidated Allee's entire claim against him. Tex.Rev.Civ.Stat.Ann. art. 5069–1.06 (Vernon 1987). Usury in the subsequent renewal and extension agreement, therefore, would not only infect that agreement; it would permeate the entire transaction between the senior lienholder and the debtor, and would taint the original indebtedness.

The renewal and extension agreement in this case was negotiated by Benser and, if usurious, would establish Benser's violation of usury laws. *Gold v. Alamo Lumber Co.*, 661 S.W.2d 926, 928 (Tex.1984). Benser's contention that the original indebtedness and the renewal and extension agreement were separate and distinct is merely a subterfuge to evade the laws prohibiting usury. *See Lawler v. Lomas & Nettleton Mortgage Investors*, 691 S.W.2d 593, 597 (Tex.1985) (Spears, J., concurring); *RepublicBank Dallas N.A. v. Shook*, 653 S.W.2d 278, 283 (Tex.1983) (Spears, J., dissenting). If the renewal and extension agreement is usurious, Allee is entitled to a

declaratory judgment that the Benser lien is invalid.

MAUZY, J., joins in this dissent.

CULVER, Justice, dissenting.

Although the majority's opinion does not foreclose altogether the right of a junior lienholder to assert standing to attack a senior lien as constitutionally usurious, it does preclude standing of a junior lienholder to assert statutory usury in order to void a senior lien. From this result, I must dissent.

Usury laws are designed mainly to compensate unsophisticated or disadvantaged borrowers and to punish and deter unscrupulous lenders who prey on such individuals. To achieve these ends, our usury statute provides for severe penalties that are assessed against culpable lenders.[1] By amending the Act in 1979, the legislature made it clear that only the "obligor" could collect the penalties imposed by the statute. An obligor has been defined as a person who pays, is charged, or has contracted to pay interest at a rate in excess of that allowed by law. *Concrete Construction Supply, Inc. v. M.F.C., Inc.*, 636 S.W.2d 475, 477 (Tex.App.—Dallas 1982, no writ). Focusing entirely on the "obligor" language, Benser argues that Allee lacks standing to seek the remedies provided by Article 5069–1.06 because she never paid, was charged, nor contracted to pay interest. Benser cites *Houston Sash & Door Co. v. Heaner*, 577 S.W.2d 217 (Tex.1979), wherein we held that a guarantor on an open account could not interpose the debtor's usury defense in order to escape liability under the guaranty agreement. Numerous cases decided both before and after *Houston Sash* have held that only immediate parties to a transaction may assert usury in the transaction to avoid liability or collect statutory penalties.[2] Those cases are easily distinguished from the case at bar because Allee does not seek to avoid liability on a debt and is not asking for statutory penalties. She is asking simply that her lien be declared superior to the allegedly usurious Benser lien. Consequently, the *Houston Sash* decision and the other similar decisions should have no bearing on the issue before us and would not be affected by our holding that junior lienholders have standing to challenge usurious senior liens.

I recognize that the usury statute is designed mainly to govern the rights of immediate parties to loan agreements. However, the lender and borrower are not nec-

---

1. Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(1)–(2) (Vernon 1987) provides:

 (1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor three times the amount of usurious interest contracted for, charged or received, such usurious interest being the amount [of] the total interest contracted for, charged, or received exceeds the amount of interest allowed by law, and reasonable attorney fees fixed by the court except that in no event shall the amount forfeited be less than Two Thousand Dollars or Twenty percent of the principal, whichever is the smaller sum; provided, that there shall be no penalty for any usurious interest which results from accidental and bona fide error.

 (2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court; provided further that any such person violating the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall

 be punished by fine of not more than One Thousand Dollars. Each contract or transaction in violation of this section shall constitute a separate offense punishable hereunder.

2. *Childs v. Taylor Cotton Oil Co.*, 612 S.W.2d 245 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.) (estate of debtor may not collect statutory penalties); *Micrea, Inc. v. Eureka Life Ins. Co. of America*, 534 S.W.2d 348 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.) (Guarantor cannot collect statutory penalties); *Liberty Mutual Ins. Co. v. E.B. Hopkins*, 422 S.W.2d 203 (Tex.Civ. App.—Beaumont 1967, writ ref'd n.r.e.) (only the party paying interest may recover statutory penalties); *Patterson v. Neel*, 610 S.W.2d 154 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ) (binding obligation must exist between plaintiff and defendant before plaintiff can collect statutory penalties); *Hartnett v. Adams & Holmes Mortgage Co.*, 539 S.W.2d 181 (Tex.Civ. App.—Texarkana 1976, no writ) ("obligor" is one who agrees to pay interest); *Guardian Consumer Finance Corp. v. C.H. Langdeau*, 329 S.W.2d 926 (Tex.Civ.App.—Austin 1959, no writ) (receiver cannot collect statutory penalties).

essarily the only parties with recognizable interests in a loan transaction. When a borrower pledges collateral as security for a loan, the lender acquires the right to have satisfaction out of the collateral pledged to secure the payment of the debt. If the borrower subsequently pledges the same collateral as security for another loan from another lender, the second lender acquires the same right of satisfaction, except that his right is subordinate to that of the first lender. In this case, Benser is in the position of first lender, or senior lienholder, and Allee is in the position of second lender, or junior lienholder. When Morris defaulted on his obligations to Benser and Allee, Allee's right of satisfaction was dependent upon the validity of Benser's senior lien.

In recognition of the rights of junior lienholders under these circumstances, our courts have carved out an exception to the general rule that only immediate parties to a loan transaction may assert usury when questioning its validity. In *Maloney v. Eaheart*, 81 Tex. 281, 16 S.W. 1030 (1891), this court held that a junior lienholder has the right to protect his lien by paying off the amount that is just and legally due on the senior lien. Thus, the court held that "the right to remove the first lien by discharging so much of appellant's [senior lienholder's] lien as was lawful was acquired by the second mortgagee when his lien was acquired." *Id.* at 1031. Further, it has been held that even when a junior lienholder takes a lien with notice of a senior lien, the junior lienholder may nevertheless assert usury in the senior lien. *Johnson v. Lasker Real Estate Ass'n*, 21 S.W. 961, 962 (Tex.Civ.App.1893, no writ); cf. *Sugg v. Smith*, 205 S.W. 363, 370 (Tex. Civ.App.—Austin 1918, writ ref'd) (junior lienholder who has not assumed payment of preexisting mortgage may show usury in preexisting debt if property is not of sufficient value to discharge both debts).

Compelling reasons existed for the creation of the "junior lienholder" exception. One commentator wrote:

Anyone in legal privity with the mortgagor, unless he has debarred himself of the right to dispute the mortgage, may set up this defense; otherwise the property would be practically inalienable in the hands of the mortgagor, unless he should be willing to affirm the usurious mortgage by selling the property subject to it. But the owner of the property has, of course, the right to sell the property as though such void mortgage did not exist; and the purchaser necessarily acquires all the rights of his vendor to question the validity of the usurious encumbrance.

2 L. Jones, *Mortgages* § 791 (8th Ed.1928).

Such reasoning is still persuasive. The Benser lien, if tainted by usury in the renewal and extension agreement, is void as a matter of law. Tex. Const. Art. XVI, § 11. Failure of the lien would have a direct impact on Allee's right to satisfaction from the sale of the common property pledged as security in the two transactions. For the above reasons, I would hold that a junior lienholder has standing to assert usury in a priority dispute with a senior lien and that a suit for declaratory judgment is the proper vehicle for determining priority between the competing liens. Thus, I would sustain Allee's first point of error.

In her second point of error, Allee contends that the court of appeals erred in failing to decide, as a matter of law, that the $30,000 paid by Morris to Benser as consideration under the renewal and extension agreement constituted interest. In response, Benser argues that the purpose behind the renewal and extension agreement was to allow Morris one last opportunity to salvage the collateral and work out his financial cash flow problems. Benser argues that the $30,000 charge was a separate, distinct, and bona fide consideration for purposes other than the simple lending of money.

The usury statute defines "interest" as "the compensation allowed by law for the use or forebearance or detention of money." TEX.REV.CIV.STAT.ANN. art. 5069–1.01(a) (Vernon 1987). In determining whether a particular charge constitutes interest, courts look beyond the "labels"

placed on the charges. *Gonzalez County Savings & Loan Association v. Freeman,* 534 S.W.2d 903 (Tex.1976). A charge which is in fact compensation for the use, forebearance or detention of money is interest, regardless of the label placed upon it by the lender. Art. 5069–1.01(a). Where a dispute in the evidence exists as to whether the charge is merely a device to conceal usury, a question of fact is raised for the jury. *Greever v. Persky,* 140 Tex. 64, 165 S.W.2d 709 (1942). I believe that such a fact question exists in this case. Benser filed his own sworn affidavit along with his response to Allee's motion for summary judgment, wherein he stated that he "charged Thomas E. Morris various sums of money which represented compensation for services rendered as a guarantor, including time spent negotiating the guarantee agreement and the renewal and extension as well as consultation with the attorneys." I believe this summary judgment evidence raises a fact question with respect to whether the $30,000 paid by Morris under the renewal and extension agreement constituted interest.

This cause should have been remanded to the trial court with instructions to proceed to trial.

KILGARLIN, J., joins in this dissenting opinion.