Frank J. PAGEL, Appellant,

v.

Richard WHATLEY d/b/a Whatley Flying Service, Appellee.

No. 13–00–753–CV.

Court of Appeals of Texas, Corpus Christi.

May 16, 2002.

Dissenting Opinion on Denial of Rehearing En Banc Aug. 22, 2002.

Dorsey, J., filed dissenting opinion on motion for rehearing en banc.

Cynthia T. Sheppard, Cuero, John W. Griffin, Jr., Larry Elliott, Robert P. Houston, Houston, Marek & Griffin, Victoria, for appellant.

Charles A. Hood, Port Lavaca, for appellee.

Before Chief Justice VALDEZ and Justices HINOJOSA and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

Appellant Frank J. Pagel appeals from a trial court judgment in favor of appellee Richard Whatley, doing business as Whatley Flying Service ("Whatley"). Whatley's suit was based on Pagel's non-payment of an open account. Pagel filed a counterclaim, seeking damages for usurious interest charged on the account. After a bench trial, judgment was entered in favor of Whatley in his suit on the open account. A take-nothing judgment was entered disposing of Pagel's counterclaim, from which this appeal ensued. We affirm.

### Factual Background

Richard Whatley is a self-employed farmer and owner of Whatley Flying Service, a crop dusting service, in business since 1966. Frank Pagel, a farmer, was Whatley's first customer and motivated Whatley to go into the business of crop dusting. Pagel employed his services during the period between 1992 and 1995 on an open account. Pagel would request crop dusting of fields on his farm, and Whatley would provide the service and bill him, sometimes charging him less than the normal rate. Pagel was to pay at a later date. All services performed were at Pagel's request. As of the time of trial, the principal outstanding balance due on Pagel's account was $7,971.69, which represented "more than reasonable" charges for the services rendered. Pagel last paid on the account on December 23, 1996.

Wanting Pagel to "just pay his bill" and after several visits to Pagel's home, Whatley told Pagel that he would "dismiss all service charge[s] and everything." Pagel told him that the service charge was too high, so Whatley agreed to take the service charges off the account and requested that Pagel make arrangements to pay with Whatley's attorney within the next month.[1] At that time, Pagel agreed to pay him 10% interest on the money owed. The agreement was not reduced to writing. Whatley waited the month and sent Pagel a "corrected statement of just the money that he owed me so that there would be no question about anything other than the principal that he owed me." Whatley explained that, in 1994, Pagel had agreed to pay him "whatever interest I normally charged," on the approximately $10,000 due on his account at that time, if Whatley would "finance him through" that season. Whatley agreed and completed a "credit statement," reflecting 18% per year which was his finance rate; however, Pagel never signed the document, despite Whatley's repeated attempts to have Pagel sign it. The statements that Whatley sent thereafter included the 18% annual interest charge on the account but that charge was ultimately deleted. Regarding billing Pagel at 18% interest, Whatley explained:

> We have a computer, and it sends out a statement; and if a person agrees to pay the service charge that we charge, we have a little button. We push on it, and it puts an asterisk by its name, and it sends out the service charge to that person. If it does not have a service charge, we push the little button, and it takes it off. It doesn't even put it on there. So, he agreed to it, and we punched the computer.

> * * *

> My wife and I were both sitting in the office when he made the agreement, and

---

1. Fred Turner, an attorney, had written Pagel a letter "requesting him that he pay his bill." Whatley testified he personally had requested payment several times throughout the four-year period.

she can testify to that fact, too. She was there. She's the one that pushed the button.

\* \* \*

He [Pagel] agreed to give me a written agreement, but he never gave it to me.

Charging 18% was Whatley's standard procedure, if he had "an agreement with a person." He knew that he needed a written agreement with Pagel in order to charge 18% interest. Whatley ultimately sued for the principal amount, attorney's fees, and pre-judgment interest.

On December 22, 1998, Whatley filed a lawsuit alleging that, after demand, Pagel had not paid for crop dusting products and services rendered at Pagel's request. Signed on the same date and attached to the original petition was Whatley's signed statement:

I, RICHARD WHATLEY, hereby certify that I was fully and completely informed by CHARLES HOOD of the possibility and consequences of a usury violation in regard to collection work he is doing for me, and told him to proceed.

Also attached were invoices and a ledger sheet reflecting debits and credits to the account.[2] The first and last debits to the account are dated July 16, 1992, and September 28, 1995, respectively. Reflected on the account are seven credits with the last three payments made in 1996, leaving a balance of $7,971.69.[3] No interest is shown on the ledger sheet.

On March 13, 2000, Pagel filed his counterclaim for usury. He alleged that "Whatley charged interest at the rate of 18% per annum and that there was no written or oral agreement authorizing such charge." Pagel also alleged he was "entitled to recover all sums paid to Whatley, plus three times the usurious interest charged, plus attorney fees and costs of court ... and that Whatley is not entitled to recover any sums from him as a result of such usurious conduct."

### The Judgment

At the conclusion of the proceedings, the trial court stated:

Well, here's B what I've seen from the evidence is that there was an agreement, and that there was a bonafide error, and that there was a correction after that. I find for the plaintiff in this case.

In material part, the judgment was entered in favor of Whatley for "actual damages in the principal sum of $7,971.69" on his claim for damages against Pagel. A take-nothing judgment in favor of Whatley was entered against Pagel on his counterclaim for usury. The judgment awards pre-judgment interest at the rate of 6% per annum totalling $518.92. It further awards reasonable and necessary attorney's fees in the amount of $6,759.95 and post-judgment interest at the rate of 10% per annum.

### The Complained of Findings of Fact and Conclusions of Law

Upon Pagel's timely request, the trial court filed its "Findings of Fact and Conclusions of Law."[4] Appellant complains of the following findings of fact:

6. After Defendant agreed to pay Plaintiff interest on the account, Plain-

---

**2.** The petition was admitted as an exhibit at the trial. The ledger sheet was admitted as a separate exhibit.

**3.** The credits reflect as follows: 11/18/92 $500; 2/3/93 $240.23; 2/5/94 $73.60; 7/2/95 $324.50; 4/7/96 $2,000; 6/28/96 $1,000; 12/23/96 $4,000.

**4.** Tex.R. Civ. P. 296.

tiff's computer automatically began adding eighteen percent (18%) interest, the normal amount Plaintiff charged, but Defendant never signed and did not return it to Plaintiff.

14. Defendant was contacted by Plaintiff before limitations ran and the principal balance alone demanded by Plaintiff.

15. When Plaintiff contacted Defendant as referred to in Finding of Fact # 13, Plaintiff discovered a bona fide error had been made in is [sic] computer charging eighteen percent (18%) per annum interest, and first discovered Defendant would not sign and return to Plaintiff the credit agreement referred to in Finding of Fact # 5.[5]

17. Plaintiff's Original Petition, filed on December 22, 1998, and served on Plaintiff, had attached thereto an admission of usury and did not change [sic] any interest.

Appellant also complains about the following conclusions of law:

4. Plaintiff's charge of illegal interest was the result of bona fide and accidental error.

5. Plaintiff corrected its charge of illegal interest within sixty (60) days of its discovery and gave Defendant written notice of any violation before Defendant gave Plaintiff written notice of a usury claim or filed suit therefore [sic].

6. Defendant is entitled to take nothing on his counterclaim of illegal interest.

## Issue Presented for Review

Pagel presents a single issue for our review. He complains that the trial court's findings of fact are not supported by legally or factually sufficient evidence

and the conclusions of law are erroneous. More specifically, he states that: (1) Whatley's charge of usurious interest was not the result of bona fide and accidental error and (2) Whatley failed to statutorily cure his charge of illegal interest by giving appellant correction and notice of his usury violation. In effect, Pagel complains that the evidence was legally and factually insufficient to support the findings of fact and conclusions of law that Whatley established two statutory defenses.

## Standard of Review

This is an appeal challenging the legal and factual sufficiency of the evidence of the written findings of fact and conclusions of law. In considering a factual sufficiency issue, we must review all the evidence in the record. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996). Inferences may be used to support the judgment "so long as they are reasonable in light of all the evidence." *Id.* We will overturn a trial court's factual findings only if the challenged findings shock the conscience, clearly demonstrate bias, or are so against the great weight and preponderance of the evidence as to be manifestly unjust. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998). If those factual findings are found to be against the great weight and preponderance of the evidence, we must set aside the verdict and remand the cause for a new trial. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We review a factual sufficiency issue in a bench trial using the same standard that we use in reviewing factual sufficiency following a jury verdict. *K.C. Roofing Co., Inc. v. Abundis,* 940 S.W.2d 375,

---

**5.** Finding of fact number 5 states: "Plaintiff sent Defendant a written credit agreement memorializing Defendant's agreement to pay eighteen percent (18%) *per annum* service charges to Defendant's statements" (emphasis

in the original). Finding of fact number 13 states: "Plaintiff never collected any interest or applied payments to interest; all of Defendant's payments were applied to old principal balances."

377 (Tex.App.—San Antonio 1997, writ denied).

Legal sufficiency issues following a bench trial are also reviewed in the same manner as legal sufficiency issues following a jury verdict. *Id.* We review a legal sufficiency challenge by considering all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Formosa Plastics v. Presidio Eng'rs,* 960 S.W.2d 41, 48 (Tex.1998); *Norwest Mortgage, Inc. v. Salinas,* 999 S.W.2d 846, 853 (Tex.App.—Corpus Christi 1999, pet. denied). A "no evidence" standard of review is applied when the party not bearing the burden of proof at trial challenges a finding of fact by arguing that the evidence is legally insufficient to support the finding. *Hickey v. Couchman,* 797 S.W.2d 103, 109 (Tex.App.—Corpus Christi 1990, writ denied). A legal sufficiency point may only be sustained when the evidence conclusively establishes the absence of a vital fact, the record discloses no more than a mere scintilla of evidence to prove a vital fact, or the court is bound by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact. *Hines v. Commission for Lawyer Discipline,* 28 S.W.3d 697, 701 (Tex.App.—Corpus Christi 2000, no pet.).

██ Conclusions of law are reviewed *de novo* and will be upheld if the judgment can be sustained on any legal theory supported by the evidence. *Harlingen Irrigation Dist. Cameron County No. 1 v. Caprock Comm. Corp.,* 49 S.W.3d 520, 530 (Tex.App.—Corpus Christi 2001, pet. denied). We will not reverse an incorrect conclusion of law if the controlling findings of fact support a correct legal theory. *Id.* at 531. Nor will we reverse conclusions of law unless they are erroneous as a matter of law. *Id.* at 530–31.

## Discussion

In his brief, Pagel asserts that the undisputed evidence in the case, including Whatley's admissions, shows that Whatley charged Pagel the illegal rate of interest of 18%. He adds that, although the trial court's findings acknowledge the charging of this illegal rate of interest, the trial court made the erroneous and unsupported findings that: (1) such charges were the result of bona fide and accidental error; and (2) such illegal charges were statutorily "cured" by Whatley's written notice and correction of such violation. Pagel complains that the trial court erred in finding excuse on the basis of two alternative defenses: (1) that the usurious charges were the result of bona fide and accidental error; and, (2) that Whatley "corrected" the illegal charges by sending a statement with the interest charges deleted and by giving written notice of the violation. Appellant concludes that neither of these defenses are supported by legally and factually sufficient evidence, and that the trial court's legal conclusions regarding the defenses are erroneous.

Whatley counters that usury was not charged and, even if charged, it was a result of accidental and bona fide error. He further states that he cured any complained-of error.

Pagel's counterclaim was based upon the relief accorded by section 305.001 of the Texas Finance Code, which provides:

(a) A creditor who contracts for, charges, or receives interest that is greater than the amount authorized by this subtitle is liable to the obligor for an amount that is equal to the greater of:

(1) three times the amount computed by subtracting the amount of interest allowed by law from the total amount of the interest contracted for, charged, or received; or,

(2) $2,000 or 20 percent of the amount of the principal, whichever is less.

Tex. Fin.Code Ann. § 305.001 (Vernon Supp.2002).

Whatley's defense to that counterclaim was premised upon sections 302.002, 305.101, and 305.103(a) of the finance code. Section 302.002 provides, in relevant part:

If a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent per year on the principal amount of the credit extended beginning on the 30th day after the date on which the amount is due and payable.

Tex. Fin.Code Ann. § 302.002 (Vernon Supp.2002).

Sec. 305.101 provides:

A creditor is not subject to penalty under this chapter for any usurious interest that results from an accidental and bona fide error.

Tex. Fin.Code Ann. § 305.101 (Vernon Supp.2002).

Section 305.103(a) provides:

A creditor is not liable to an obligor for a violation of this subtitle if:

(1) not later than the 60th day after the date the creditor actually discovered the violation, the creditor corrects the violation as to that obligor by taking any necessary action and making any necessary adjustment, including the payment of interest on a refund, if any, at the applicable rate provided for in the contract of the parties; and

(2) the creditor gives written notice to the obligor of the violation before the obligor gives written notice of the vio-

lation or files an action alleging the violation.

Tex. Fin.Code Ann. § 305.103(a) (Vernon Supp.2002).

There are two affirmative defenses to a claim for usury, corresponding to Pagel's complaints. Under the first defense, there is no penalty when usurious interest results from an "accidental and bona fide error." Tex. Fin.Code Ann. § 305.101 (Vernon Supp.2002); *Tyra v. Bob Carroll Const. Co.*, 639 S.W.2d 690, 691 (Tex.1982). Under the second defense, liability is not imposed where the creditor gives written notice to the obligor of the violation before the obligor gives written notice of the violation or files an action alleging the violation. Tex. Fin.Code Ann. § 305.103(a) (Vernon Supp.2002).

### *"Curing" the Error*

■ In his brief, Pagel correctly states that a creditor is not liable to an obligor for a usury law violation if the creditor (1) takes sufficient and timely corrective action, and (2) gives written notice of the violation to the obligor of the violation before the obligor gives written notice of the violation or files an action alleging the violation. *Id.* Pagel complains that the trial court's findings of fact and conclusions of law were erroneous because Whatley failed to statutorily cure his charge of illegal interest by giving him correction and notice of his usury violation.[6]

On cross-examination regarding written notice to Pagel about the interest charged "above the rate that you're allowed to charge," Whatley testified that his statement filed with the lawsuit was his notice. Upon further questioning, he agreed that the petition was his written notice to Pagel

---

**6.** Specifically, Pagel challenges findings of fact numbered 14, 15, and 17 as well as conclusions of law numbered 5 and 6.

that he had corrected the interest and admitted there was no other written statement regarding violation of the usury statute and taking steps to correct it. He testified that he "never received one nickel's worth of interest" from Pagel. In a November 1994 conversation, Pagel told him that "I've been in business before, and I know how not to pay you;" and he said, "If you file this lawsuit, I'm not going to pay you anything." Of the three checks that Pagel sent him, all amounts were applied to principal only.

Pagel was then called to testify. He agreed that he requested the products used and services Whatley performed and the charges were reasonable and necessary. He agreed that he had an outstanding balance on his account but did not know whether $7,971.69 was a reasonable and necessary charge. When asked, "Other than the usury claim, do you have any other defense to this lawsuit," he answered, "No, sir." On questioning by his counsel, Pagel agreed that there was not a written document allowing Whatley to charge 18% interest per year. Although Whatley and he "talked about" a charge for interest, "there was never any agreement" and no figure quoted. When he made payments in 1996, he did not know that they would be applied to principal only. He did not receive written notification from Whatley that the interest charged was usurious. Upon questioning by Whatley's counsel, he admitted agreeing to pay interest "but we never did talk about rates" and agreed to let Whatley charge him for interest. He acknowledged

that Whatley's wife was present when the agreement was made. He admittedly did not sign Whatley's credit agreement. He conceded that prior to his attorney's letter regarding usurious interest, he had not made any claim that Whatley was charging illegal interest.[7] Pagel testified he had complained to Whatley that the interest was "awful high." When shown the exhibit, he admitted the ledger sheet "doesn't reflect interest on the invoices."[8]

The record further shows that, after several unsuccessful efforts to secure payment on the account, Whatley accepted that Pagel had not paid on the account and had not returned the executed credit agreement. Contrary to appellant's contention, Whatley corrected any usury violation by deleting charges of any interest whatsoever on the unpaid account, making demand for only the principal balance reflecting products and services rendered, and applying payments made to principal only, thereby satisfying the first prong of finance code section 305.103(a). Tex. Fin. Code Ann. § 305.103(a)(1) (Vernon Supp. 2002). In addition, the record before us establishes that by Whatley's statement attached to his original petition, he provided Pagel notice of the possibility and consequences of a usury violation. The sufficiency of the notice can reasonably be inferred by Pagel's actions after he received Whatley's written statement. First, we note that Pagel admittedly made no claim for a usury violation at any time prior to his attorney's letter dated over seven months after the lawsuit was filed

7. Admitted as an exhibit at trial, a letter dated July 7, 1999, from Pagel's counsel advised Whatley's counsel of a claim for usury. Whatley was cross-examined about the letter, which was received after he filed his lawsuit, acknowledging he had reviewed it with his attorney and instructed his attorney to proceed with the case. On March 13, 2000, Pagel filed his counterclaim for usury.

8. The account balance reflected on the ledger sheet is "7971.69" and reflects a carryover balance from 1995 in the amount of "14971.69." The exhibit shows that in 1996, Pagel made payments in the amounts of $2,000, $1,000, and $4,000. No other payments are reflected thereafter.

against him. Second, Pagel filed his counterclaim over fifteen months after receiving Whatley's statement. The trial court could reasonably infer that the statement was sufficient to prompt the counterclaim for usury where none had been urged previously.

Considering all the evidence in the record as is required for a review of factual sufficiency, we find that the findings of fact neither shock the conscience, nor demonstrate bias, and they were not against the great weight and preponderance of the evidence. *See Ellis,* 971 S.W.2d at 406–07; *Ortiz,* 917 S.W.2d at 772.

Viewing all the evidence in the light most favorable to Whatley as the prevailing party, indulging every reasonable inference in his favor, we hold that the evidence was legally sufficient to establish that Whatley contacted Pagel before limitations ran and demanded the principal balance alone, as the trial court found. *See Formosa Plastics,* 960 S.W.2d at 48.

We also find that the trial court did not err in entering the conclusions of law as Whatley established his excuse as a matter of law. *See Harlingen Irrigation Dist. Cameron County No. 1,* 49 S.W.3d at 530.

Because we have found that Whatley conclusively established an affirmative defense to the counterclaim under section 305.103(a) of the Texas Finance Code, we need not address whether he also established a defense of "bona fide and accidental error." Tex.R.App. P. 47.1.

We note that Pagel does not address the sixty-day requirement in section 305.103(a)(1) of the Texas Finance Code, and he does not address conclusion of law number 6, which states, "Defendant is entitled to take nothing on his counterclaim of illegal interest." Therefore, Pagel has waived any error related to these issues.[9]

---

9. In addition, we note that the record affirmatively establishes that, well before the lawsuit

## Conclusion

We overrule Pagel's sole issue and affirm the judgment of the trial court.

Justice DORSEY, dissenting on motion for rehearing en banc.

I believe the panel erred in determining that Whatley gave Pagel the required statutory written notice of his usury violation. The notice is required in order to maintain the statutory defense to usury. Whatley merely attached to his petition a note that he, Whatley, had been notified by his lawyer of "the possibility and consequences of a usury violation." That is not notice to Pagel that Whatley violated the statute. I would grant rehearing and reverse.

Whatley sued Pagel for non-payment of an open account for crop-dusting services. Pagel filed a counterclaim against Whatley, seeking damages for usurious interest charged on the account. Pagel's counterclaim alleged that "Whatley charged interest at the rate of 18% per annum and that there was no written or oral agreement authorizing such charge." The trial court entered a judgment in favor of Whatley on his claim for damages against Pagel, and it entered a take-nothing judgment against Pagel on his counterclaim for usury.

One of Whatley's defenses to Pagel's counterclaim is found in the Texas Finance Code, which states:

(a) A creditor is not liable to an obligor for a violation of this subtitle if:

(1) not later than the 60th day after the date the creditor actually discovered the violation, the creditor corrects the violation as to that obligor by taking any necessary action and making any necessary adjustment, including the payment of interest on a refund, if any, at the

---

was filed, Whatley deleted the 18% interest altogether.

applicable rate provided for in the contract of the parties; and

(2) the creditor gives written notice to the obligor of the violation before the obligor gives written notice of the violation or files an action alleging the violation.

TEX. FIN.CODE ANN. § 305.103(a) (Vernon Supp.2002). Accordingly the issue in this case is whether Whatley's statement attached to his original petition meets the requirements of section 305.103(a)(2) and, therefore, qualifies as a defense to Pagel's counterclaim for usury. Whatley's statement provided:

I, RICHARD WHATLEY, hereby certify that I was fully and completely informed by CHARLES HOOD of the possibility and consequences of a usury violation in regard to collection work he is doing for me, and told him to proceed.

The majority found that Whatley, by this statement, conclusively established an affirmative defense to the counterclaim under section 305.103(a)(2), stating

the record before us establishes that by Whatley's statement attached to his original petition, he provided Pagel notice of the possibility and consequences of a usury violation. The sufficiency of the notice can reasonably be inferred by Pagel's actions after he received Whatley's written statement. First, we note that Pagel admittedly made no claim for a usury violation at any time prior to his attorney's letter dated over seven months after the lawsuit was filed against him. Second, Pagel filed his counterclaim over fifteen months after receiving Whatley's statement. The trial court could reasonably infer that the statement was sufficient to prompt the counterclaim for usury where none had been urged previously.

Pagel filed a motion for rehearing *en banc,* stating that this Court found that Whatley, appellee,

proved *as a matter of law,* that he is entitled to the statutory defense of cure to his usury violation. The Court's basis for this holding is the fact that Appellee, after charging Appellant illegal usurious interest for four years, filed a lawsuit that itself did not include any interest charges, along with an attached affidavit stating that he understood the consequences of a possible usury violation and instructed his lawyer to proceed anyway.

(emphasis in original). Pagel argues that Whatley's statement had absolutely nothing to do with any intent on Whatley's part to notify him of a usury violation. I agree.

### *Construing Section 305.103(a)(2)*

Our objective when we construe a statute is to determine and give effect to the Legislature's intent. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex.1998). We accomplish that purpose, first, by looking to the plain and common meaning of the statute's words. *Id.* We must also view a statute's terms in context and give them full effect. *Id.* Section 305.103(a)(2) requires the creditor to give "written notice to the obligor *of the violation....* " (emphasis added). Whatley's statement stated only that he had been advised of the *possible* consequences of a usury violation. However the plain and common meaning of the statute's words required Whatley to give Pagel written notice "of the violation", and not a possible violation. Nowhere in Whatley's pleadings or attached statement did Whatley admit or notify Pagel that he had actually violated the usury statute, a requirement under section 305.103(a)(2). *See* TEX. FIN.CODE ANN. § 305.103(a)(2) (Vernon Supp.2002).

The question here is whether a creditor, Whatley, upon discovering he has committed usury, has taken timely and sufficient steps to cure it by correcting it and notifying the debtor in writing that he had vio-

lated the statute. *See id.* I perceive the statute to address primarily inadvertent charges of usury, so in order to avoid the statutory penalties, the one charging excessive interest can confess the violation and delete the charges. The inference that the affidavit notified Pagel of the usury violation cannot be derived from the fact that Pagel later counterclaimed for the penalties. It has been recognized by the Texas Supreme Court in a unanimous opinion in *Steves Sash & Door Co. v. Ceco Corp.,* 751 S.W.2d 473 (Tex.1988), "that since the time of the Code of Hammurabi (around 1800 B.C.) legislatures have imposed exceedingly harsh penalties for usury." *Id.* at 476. The statutes that the legislatures have enacted, which are penal in nature, are enacted for the protection of those who owe money. They were enacted for the prevention of unjust oppression by unscrupulous persons who are ready to take undue advantage of others. *Risica & Sons, Inc. v. Tubelite,* 794 S.W.2d 468, 470 (Tex.App.-Corpus Christi, 1990), *aff'd,* 819 S.W.2d 801 (Tex.1991).

I would grant the motion for rehearing.