# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00461-CV

**Bair Chase Property Company, LLC, a Nevada Limited Liability Company; Kenneth A. Barfield; and Western Property Development Company, LLC, a Delaware Limited Liability Company, Appellants**

**v.**

**S&K Development Company, Inc., a Texas Corporation, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. D-1-GN-06-002584, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

Appellants Bair Chase Property Company ("BCPC"), Kenneth A. Barfield, and Western Property Development Company ("Western Property") (collectively, "Bair Chase"), appeal from a summary judgment granted in favor of S&K Development Company ("S&K"), as well as an award of attorney's fees to S&K. S&K initially brought suit against Bair Chase to recover on a promissory note and guaranty agreement. In response, Bair Chase brought a counterclaim for usury, leading S&K to take corrective action under the Texas Finance Code. S&K then filed a traditional motion for summary judgment on the note and a no-evidence motion for summary judgment on the usury counterclaim. The trial court granted both motions and awarded S&K attorney's fees and costs. Because we have determined that the trial court did not err in granting summary judgment, we affirm the trial court's order in that respect. However, because S&K failed to segregate its

attorney's fees, the award of attorney's fees is reversed and remanded for a redetermination after fees incurred by S&K in correcting alleged usury violations are segregated from fees incurred in pursuing S&K's recovery on the note.

**BACKGROUND**

In July 2005, BCPC executed and delivered to S&K a promissory note for a loan of $1.4 million, and a second promissory note for a loan of $100,000. The $1.4 million note provided that BCPC would pay interest on the unpaid principal balance at a rate equal to the lesser of 12% per annum or the maximum rate of interest permitted by applicable usury laws. The $100,000 note included a similar provision, capping interest at a rate equal to the lesser of 6% per annum or the maximum rate permitted by law. Each note was accompanied by a guaranty agreement, both of which were signed by Barfield and Western Property as guarantors. In addition, BCPC, Barfield, and Western Property each signed a security agreement, giving S&K security interests in certain property to secure payment of the notes.

In September 2005, and again in October 2005, S&K agreed to extensions of the $1.4 million note's maturity date. On December 30, 2005, S&K provided written notice to Bair Chase that both notes had matured and were in default. When Bair Chase did not make payments in response to S&K's demand letters, S&K brought suit in Travis County to recover unpaid principal and interest due on the notes, as well as attorney's fees and collection costs.

On December 4, 2006, Bair Chase filed a counterclaim, alleging usury in connection with the notes. Eight days later, S&K filed a plea in abatement, pursuant to section 305.006(d) of

2

the finance code. *See* Tex. Fin. Code Ann. § 305.006(d) (West 2006). Section 305.006(d) provides that when a debtor files a counterclaim alleging usurious interest in an original action by a creditor, the action is subject to abatement at the creditor's request, to give the creditor a chance to correct any usury violation. *Id.* If the violation is corrected, the creditor avoids liability. *Id.*

In compliance with section 305.006(d), the trial court issued an order abating the case for 60 days and requiring S&K to pay Bair Chase $6,000 in attorney's fees.

During the abatement period, S&K paid the attorney's fees as required by the trial court's order and sent Bair Chase a corrective-action letter declaring that the $100,000 note and the guaranty agreement executed in connection with it were void. The letter also voided two other agreements that had been executed in relation to the notes: (1) an assignment of membership and right of first refusal between BCPC and S&K relating to a private golf and residence club that BCPC intended to develop, and (2) a participation agreement between S&K and PIP Management, L.P., involving a mineral interest in Australia. In connection with the $1.4 million note, the corrective-action letter provided a corrected payoff sheet detailing the remaining principal and interest due and crediting Bair Chase with previous payments made.

S&K then filed an amended petition, seeking to recover the unpaid amounts due under the $1.4 million note and guaranty, as well as a traditional motion for summary judgment with respect to breach of the $1.4 million note and a no-evidence motion for summary judgment on Bair Chase's usury counterclaim. The trial court granted the motions and rendered judgment that S&K recover actual damages of $1,608,263.78, representing amounts due under the $1.4 million note and

3

guaranty as of February 8, 2007, plus $50,000 in attorney's fees. Bair Chase's motion for new trial was overruled by operation of law, and this appeal followed.

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must show that there is no issue of material fact and that it is entitled to judgment as a matter of law. *TX Far West, Ltd. v. Texas Invs. Mgmt., Inc.*, 127 S.W.3d 295, 301 (Tex. App.—Austin 2004, no pet.). Evidence favorable to the non-movant is taken as true and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

A no-evidence motion for summary judgment must be granted if the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which the non-movant would have the burden of proof at trial, and the nonmovant fails to produce more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i); *Cox Tex. Newspapers, L.P. v. Penick*, 219 S.W.3d 425, 432-33 (Tex. App.—Austin 2007, pet. denied).

Reasonable attorney's fees are recoverable in a suit for breach of contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1997). The determination of reasonable attorney's fees is a question for the trier of fact. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex. 1991). The amount of a fee award rests in the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear abuse of discretion. *Alford v. Johnston*,

224 S.W.3d 291, 298 (Tex. App.—El Paso 2005, pet. denied). The need to segregate fees is a question of law, while the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006).

## DISCUSSION

*Original Loan Agreement*

In its first issue on appeal, Bair Chase argues that the original $1.4 million loan agreement between Bair Chase and S&K was usurious. However, in light of our determination of Bair Chase's other issues, particularly our holding that S&K properly corrected the alleged usury violations pursuant to section 305.006(d) of the finance code, it is not necessary for this Court to determine whether the initial loan transaction was usurious. *See* Tex. R. App. P. 47.1 (providing that appellate court need address only those issues necessary to final disposition of appeal).

*Constitutional Usury Provision*

Bair Chase's second, third, fourth, fifth, and sixth issues on appeal deal with the usury provisions of the Texas Constitution. Bair Chase argues that the Texas Constitution includes a self-executing provision that renders usurious contracts illegal and void, but only to the extent that the creditor has no valid claim for interest and all payments are applied to the principal. Bair Chase further argues that this constitutional voidness is not a "penalty," and therefore section 305.007 of the finance code, which states that the penalties provided in the finance code are the only penalties available for a violation of the usury statute, does not affect the constitutional voidness doctrine. *See* Tex. Fin. Code Ann. § 305.007 (West 2006) ("The penalties provided by this chapter are the only

5

penalties for violation of this subtitle for contracting for, charging, or receiving interest in an amount that produces a rate in excess of the maximum rate allowed by law. Common law penalties do not apply."). As a result, Bair Chase claims that the cure provision of section 305.006(d) does not allow S&K to avoid the constitutional voidness and therefore, no interest is due on the $1.4 million note and all interest previously paid should be credited to the principal.

Article 16, section 11 of the Texas Constitution states:

> The Legislature shall have authority to define interest and fix maximum rates of interest; provided, however, in the absence of legislation fixing maximum rates of interest all contracts for a greater rate of interest than ten per centum (10%) per annum shall be deemed usurious; provided, further, that in contracts where no rate of interest is agreed upon, the rate shall not exceed six per centum (6% per annum).

Tex. Const. art. XVI, § 11.

As authorized by the Constitution, the legislature has fixed maximum rates of interest. *See* Tex. Fin. Code Ann. § 302.001 (West 2006) (setting maximum rate at 10% except as otherwise provided by law), § 303.001 (West 2006) (allowing parties to contract for interest rates that do not exceed rate ceilings created by chapter 303 of the finance code), § 303.011 (West 2006) (providing that consumer credit commissioner shall send rate ceilings to secretary of state for publication in Texas Register). On July 15, 2005, the rate ceiling established by the consumer credit commissioner was 18%. Notice of Rate Ceilings, 30 Tex. Reg. 4148 (2005).[1] Furthermore, the finance code imposes a minimum rate ceiling of 18% per year. Tex. Fin. Code Ann. § 303.009(a) (West 2006).

---

[1] "A court may take judicial notice of . . . information published in the Texas Register under Section 303.011." Tex. Fin. Code Ann. § 303.012 (West 2006).

6

Bair Chase asserts that the usury provision of the Texas Constitution is self-executing, making all usurious contracts illegal and void as to interest, and that such voidness is an independent consequence from the usury penalties provided by the finance code. We agree that Texas courts have historically treated the constitutional prohibition on usury as a self-executing provision. *See, e.g.*, *Hemphill v. Watson*, 60 Tex. 679, 681 (1884); *Hatridge v. Home Life & Accident Ins. Co.*, 246 S.W.2d 666, 668 (Tex. Civ. App.—Dallas 1951, no writ) ("[A]foresaid constitutional provision is self-executing only to the extent of rendering illegal all usurious contracts."); *Watts v. Mann*, 187 S.W.2d 917, 925 (Tex. Civ. App.—Austin 1945, writ ref'd).

Relying primarily on *Allee v. Benser*, 779 S.W.2d 61 (Tex. 1988), Bair Chase asserts that the self-executing constitutional provision remains unaffected by the current usury penalties provided in the finance code. The Texas Supreme Court held in *Allee* that a junior lienholder had no standing to assert a borrower's statutory claim for usury in order to defeat a senior lien, stating:

> Since a constitutional provision still expressly condemns usury, if the renewal contract were to collect usurious interest, that portion of the contract would be illegal and void. We do not decide and expressly do not preclude the [junior lienholder] from asserting on remand that constitutionally void usurious interest was collected that must be applied against the principal indebtedness of the note. . . . The present state of the [junior lienholder's] pleadings would not allow such a remedy, so we do not decide either whether such a "common law" usury doctrine is viable.

*Id.* at 65 (citations omitted).

Significantly, the court in *Allee* specifically refers to constitutionally void usurious interest as "a 'common law' usury doctrine." *Id.* After the *Allee* opinion was issued, the Texas Legislature enacted article 1F.007 of the Texas Credit Title in 1997, expressly stating that

7

common law penalties no longer apply. *See* Act of June 2, 1997, 75th Leg., R.S., ch. 1396, § 1, 1997 Tex. Gen. Laws 5214. Article 1F.007 was recodified in 1999[2] as section 305.007 of the finance code, which states, "The penalties provided by this chapter are the only penalties for violation of this subtitle for contracting for, charging, or receiving interest in an amount that produces a rate in excess of the maximum rate allowed by law. *Common law penalties do not apply*." (Emphasis added).

Before common law penalties were expressly excluded by section 305.007 and its predecessor statute, the statutory penalty and the self-executing constitutional penalty of rendering usurious interest void and applying it to reduce the principal were recognized as independent causes of action. *See Sugg v. Smith*, 205 S.W. 363, 374 (Tex. Civ. App.—Austin 1918, writ ref'd). However, the issue of applying void interest to reduce principal was characterized as a common law claim. *See Allee*, 779 S.W.2d at 65 (referencing contention that constitutionally void usurious interest must be applied against principal as "'common law' usury doctrine"); *Danziger v. San Jacinto Sav. Ass'n*, 732 S.W.2d 300, 304 (Tex. 1987) (holding that appellants were entitled to prevail on "common law claim for return of all interest paid and cancellation of interest not yet paid" because usurious contract is unenforceable as to interest).[3]

---

[2] *See* Act of Apr. 23, 1999, 76th Leg., R.S., ch. 62, § 7.18(a), 1999 Tex. Gen. Laws 234, 254.

[3] Other jurisdictions have noted that remedies pursuant to self-executing constitutional provisions arise under common law. *See Spackman v. Board of Educ.*, 16 P.3d 533, 538 (Utah 2000) (holding that "court's ability to award damages for violation of a self-executing provision rests on the common law"); *Swift & Co. v. City of Newport News*, 52 S.E. 821, 824 (Va. 1906) ("So that when the provision of a Constitution . . . points out no remedy, and no statute affords one, . . . the provision is self-executing, and the common law, which provides a remedy for every wrong, will

Furthermore, courts that have recognized a cause of action under the self-executing constitutional provision emphasized that, at that time, the legislature had not specifically foreclosed constitutional relief when enacting statutory penalties for usury. *See Sugg*, 205 S.W. at 372 (stating, in response to argument that usury penalty statute impliedly foreclosed constitutional relief, that "we find nothing in the language of the statute which necessarily requires such construction"); *see also Hardwick v. Austin Gallery of Oriental Rugs, Inc.*, 779 S.W.2d 438, 448 (Tex. App.—Austin 1989, writ denied) (op. on reh'g) ("Nothing in that [usury] statute evidences a legislative intention to supplant the common-law remedy"). In 1997, however, the legislature specifically foreclosed such relief by enacting what is now section 305.007 of the finance code, expressly stating that the statutory penalties for usury are exclusive and that common law penalties no longer apply.

Bair Chase argues that the common law usury doctrine applies only to situations in which a borrower has already paid more than enough to pay back the principal and seeks the return of interest already paid. While case law does distinguish between a common law right of restitution and the constitutional voidness penalty, *compare Hardwick*, 779 S.W.2d at 448 (holding that "[t]he amount of usury paid is recoverable at common law in an action for equitable restitution" based on theory that usury is money fraudulently had and received), *with Danziger*, 732 S.W.2d at 304 (upholding "common law claim for return of all interest paid and cancellation of interest not yet paid" because usurious contract is unenforceable as to interest), this distinction does not lead us to conclude that the legislature, in enacting section 305.007, intended to foreclose the common law penalty of the return of usurious interest already paid, yet did not intend to foreclose the

_____

furnish the appropriate action for the redress of such grievance.").

constitutional penalty that all interest paid or payable under a usurious contract is forfeited by the creditor and must be applied to reduce the principal.

Because the self-executing constitutional provision rendering usurious contracts void as to interest constitutes a common law penalty that is now precluded by section 305.007 of the finance code, we hold that the $1.4 million note is not void as to interest under the constitutional voidness doctrine.[4] As a result, Bair Chase's second, third, fourth, fifth, and sixth issues are overruled.

*Effect of S&K's Corrective Action*

Bair Chase argues, in its seventh, eighth, ninth, tenth, and eleventh issues on appeal, that S&K has not successfully corrected the alleged usury violation.

S&K, in its efforts to correct any alleged usury violations, presented Bair Chase with a corrected payoff sheet, charging 18% per year compounded interest on all accrued interest and principal after default on the $1.4 million note. Bair Chase asserts that S&K has not successfully corrected the alleged usury violation because this corrected payoff sheet demands interest in excess of what the law allows. As previously noted, the rate ceiling established by the consumer credit

---

[4] Bair Chase's argument also fails based on the language of the applicable cure provision, section 305.006(d), which states, "A creditor who corrects a violation as provided by this subsection is *not liable* to an obligor for the violation." *See* Tex. Fin. Code Ann. § 305.006(d) (West 2006) (emphasis added). Nothing in section 305.006(d) suggests that the creditor who cures an alleged usury violation is limited only to avoiding the *statutory* penalties for usury, but remains subject to other penalties, such as the constitutional voidness doctrine. As commentators have noted, "[T]he better reasoned position is that the cure procedures are effective as to all usury claims[,] given, among other considerations, the 'comprehensive' nature of the usury statute since its inception in 1967, the rule of strict construction, and the policy of promoting cures, not discouraging cures." Dan L. Nicewander et. al., *Texas Usury Law Handbook* § 22.1 (2d ed. 2005).

commissioner was 18% at the time the transaction was entered into on July 15, 2005. Notice of Rate Ceilings, 30 Tex. Reg. 4148 (2005). Furthermore, because the finance code imposes a minimum rate ceiling of 18%, the maximum rate allowed by law would not have fallen below 18% through the duration of Bair Chase's corrected payoff sheet, which details amounts owed through February 8, 2007. *See* Tex. Fin. Code Ann. § 303.009(a) (West 2006). While the corrected payoff sheet does not, on its face, exceed the maximum lawful rate of 18%, Bair Chase argues that compounding the interest on an annual basis causes the actual rate to exceed the maximum lawful rate.

"[I]nterest which has already lawfully matured, may, together with principal, thereafter bear interest at the highest lawful rate." *Bothwell v. Farmers & Merchs. State Bank & Trust Co.*, 30 S.W.2d 289, 291 (Tex. 1930). When interest is compounded, "[p]ast due or 'matured' interest becomes a new and independent debt for which additional interest may be charged at the maximum lawful rate." *Pentico v. Mad-Wayler, Inc.*, 964 S.W.2d 708, 717 (Tex. App.—Corpus Christi 1998, pet. denied). Even when a debt bears the highest rate of interest allowed by law, a stipulation that both accrued interest and principal shall bear interest at the highest rate after maturity is not usurious. *Crider v. San Antonio Real Estate Bldg. & Loan Ass'n*, 35 S.W. 1047, 1048 (Tex. 1896).

Bair Chase argues that the interest charged in the present case is "true" compound interest, as opposed to the charge of simple interest upon matured interest, and therefore any authorities for the proposition that interest may bear interest at the highest lawful rate are inapplicable. Texas courts have, at times, distinguished simple interest upon matured interest from true compound interest, in which accrued interest is added periodically to the principal. *See*

11

*Spiller v. Spiller*, 901 S.W.2d 553, 557 (Tex. App.—San Antonio 1995, writ denied) (noting that while *Bothwell* holds that matured interest may thereafter bear interest, "it does not specifically provide for the calculation of 'compound interest'"). *But see Shoberg v. Shoberg*, 830 S.W.2d 149, 153 (Tex. App.—Houston [14th Dist.] 1992, no writ) ("Appellant contends that interest *compounded monthly* is usurious. This contention is without merit. Interest on past due interest is not usurious." (emphasis added)). However, while *Bothwell* does specifically authorize a charge of simple interest upon on overdue interest without explicitly addressing true compound interest, 30 S.W.2d at 291, Bair Chase has not provided, nor have we found, any authority for the proposition that true compound interest necessarily renders a contract usurious.[5] *See Texon Energy Corp. v. Dow Chem. Co.*, 733 S.W.2d 328, 331 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (upholding parties' agreement to compound interest monthly in event of default). Therefore, while prior cases have distinguished true compounding interest from a charge of simple interest upon matured interest, we find, for purposes of S&K's corrective action in the present case, that this is a distinction without a difference.

---

[5] Bair Chase cites to a treatise stating that while some jurisdictions do not permit overdue interest to bear interest, others "hold overdue installments of interest bear simple interest on failure to make payment as stipulated. . . . This rule does not permit true compounding of interest such as occurs when accrued interest is added to the principal. . . . Texas follows the latter view." 13 Tex. Jur. 3d *Interest on Overdue Interest* § 38 (1993). This treatise was cited in *Spiller v. Spiller*, 901 S.W.2d 553, 557 (Tex. App.—San Antonio 1995, writ denied), which describes in dicta the distinction between interest on interest and true compound interest, noting that *Bothwell v. Farmers & Merchs. State Bank & Trust Co.*, 30 S.W.2d 289, 291 (Tex. 1930), does not specifically authorize true compound interest. The court in *Spiller* did not hold that a contract imposing true compound interest on interest was necessarily usurious, nor have we found any authority for such a holding. Furthermore, a treatise is not binding on this Court. *Simplex Elec. Corp v. Holcomb*, 949 S.W.2d 446, 448 (Tex. App.—Austin 1997, pet. denied).

12

Bair Chase further argues that S&K may not compound interest because the parties did not expressly agree to do so. However, the note contains an express provision allowing for the compounding of interest, stating, "All past due principal and/or interest shall bear interest from and after maturity at a rate equal to the lesser of (a) eighteen percent (18%) per annum or (b) the Maximum Rate." Bair Chase takes the position that this language merely provides for simple interest on accrued interest, distinguishable from "true" compound interest, as discussed above. However, we must give language in a contract its plain meaning and construe it to avoid rendering any language meaningless. *See Northern Natural Gas Co. v. Conoco*, 986 S.W.2d 603, 606 (Tex. 1998) (op. on reh'g). The $1.4 million note specifically states that "past due principal and/or interest shall bear interest *from and after* maturity" (emphasis added). Furthermore, we must presume that the parties intended to enter into a legal contract, validating the contract as nonusurious if reasonably possible. *See Walker v. Temple Trust Co.*, 80 S.W.2d 935, 936-37 (Tex. 1935). Based on the plain language of the note stating that interest shall bear interest "from and after" maturity, we hold that the parties unambiguously agreed that interest on past due interest would be continuously incurred on that interest after maturity, so that any past due interest would be added to the principal. Bair Chase's construction would render the words "from and after" meaningless and would defeat the presumption that the parties agreed to a nonusurious contract. As a result, we hold that the parties expressly agreed to compound interest.

In addition to the issues regarding compound interest, Bair Chase contends that S&K failed to take sufficient corrective action under section 305.006(d). The statute does not provide guidance on how a creditor may correct an alleged usury violation. However, "[u]sury statutes are

13

penal in nature and, as a result, they must be strictly construed in such a way as to give the lender the benefit of the doubt." *First State Bank v. Dorst*, 843 S.W.2d 790, 794 (Tex. App.—Austin 1992, writ denied). While Bair Chase cites *Pagel v. Whatley*, 82 S.W.3d 571, 577 (Tex. App.—Corpus Christi 2002, pet. denied), in which a creditor cured alleged usury violations by deleting all interest charges and demanding only the principal amount due, nothing in *Pagel* indicates that such measures are *required* in order to successfully take corrective action.[6] A federal bankruptcy court applying Texas law has suggested that correction of a usury violation is accomplished by "the adjustment or correction required in order to bring the transaction into compliance with the applicable usury standard." *In re Kemper*, 263 B.R. 773, 783 (Bankr. E.D. Tex. 2001).[7] As previously discussed, the applicable usury standard at all times relevant to the transaction at issue was a maximum interest rate of 18%.

We hold that the actions of S&K in the present case demonstrate sufficient corrective action to avoid liability under section 305.006(d). In its attempt to cure the alleged usury violations, S&K declared void the $100,000 note and applicable guaranty agreement, the assignment of

---

[6] *Pagel v. Whatley*, 82 S.W.3d 571, 577 (Tex. App.—Corpus Christi 2002, pet. denied), was cited with approval by this Court in *Strasburger Enterprises v. TDGT Ltd. Partnership*, 110 S.W.3d 566, 576-77 (Tex. App.—Austin 2003, no pet.). However, the holding in *Strasburger* was based on the creditor's failure to properly notify the obligor of the usury violation as required by section 305.103 of the finance code, *see* Tex. Fin. Code Ann. § 305.103 (West 2006), and there is no discussion in *Strasburger* of any particular measures that must be taken in order to sufficiently cure an alleged usury violation. *See id.* at 577.

[7] *In re Kemper*, 263 B.R. 773, 783 (Bankr. E.D. Tex. 2001), also noted that a correction of a usury violation under section 305.103 of the finance code must be accompanied by an acknowledgment of the existence of such violation. Because S&K's corrective action was taken under section 305.006, rather than section 305.103, the requirement that the creditor acknowledge the existence of a usury violation is inapplicable to the present case.

membership and right of first refusal, and the participation agreement. In addition, S&K created a corrected payoff sheet, which applied all payments previously made by Bair Chase to outstanding interest and principal due under the $1.4 million note and imposed an interest rate of 18%—the maximum rate allowed by law—on all principal and accrued interest. In light of the fact that the cure provisions should be favorably construed so as to encourage cures, *see In re CPDC, Inc.*, 337 F.3d 436, 442 (5th Cir. 2003) ("The Texas legislature intended cure provisions in the usury statute to encourage self-correction by lenders of known usury violations . . . ."), we hold that S&K successfully cured the alleged usury violations by limiting its demand for interest to 18% on the $1.4 million note. Bair Chase's seventh, eighth, ninth, tenth, and eleventh issues are overruled.

*Retroactive Nature of Finance Code Section 305.006(d)*

In its twelfth and thirteenth issues, Bair Chase argues that S&K could not take corrective action under section 305.006(d) of the finance code because the amendment allowing a creditor to avoid liability by taking corrective action when a debtor files a usury counterclaim did not take effect until September 1, 2005, while the alleged usurious transaction took place in July 2005.

Courts generally presume that an amendment to a statute applies prospectively unless it is expressly made retroactive. *See* Tex. Gov't Code Ann. § 311.022 (West 2005); *In the Interest of M.C.C.*, 187 S.W.3d 383, 384 (Tex. 2006). However, this general rule for prospective operation does not apply to a statutory amendment that is merely procedural or remedial. *State v. Fidelity & Deposit Co. of Md.*, 223 S.W.3d 309, 312 n.2 (Tex. 2007).

15

In *Jim Walter Homes, Inc. v. Gibbens*, 608 S.W.2d 706, 711 (Tex. App.—San Antonio 1980, writ ref'd n.r.e.), the court held that a "cure provision" added to the Texas Consumer Credit Code by amendment in 1977 was "remedial and curative in nature," and should be applied retroactively to allow a creditor to cure a violation of the code that occurred prior to the amendment.

The cure provision at issue in *Jim Walter Homes* stated:

> A person has no liability to an obligor for a violation of this Subtitle or of Chapter 14 of this Title if within 60 days after having actually discovered such violation such person corrects such violation as to such obligor by performing the required duty or act or by refunding any amount in excess of that authorized by law.

Tex. Rev. Civ. Stat. Ann. art. 5069-8.01(c)(1) (West 1987) (repealed 1997).

The court noted that statutory amendments are not ordinarily applied retroactively, but stated that the amendment, being remedial and curative in nature, should be "liberally construed to accomplish [its] purpose of remedying the problem under the old law." *Jim Walter Homes*, 608 S.W.2d at 711. The court held that where the appellant's cure action took place after the amendment's effective date, the appellant successfully cured its violation of the consumer credit code, even though the transaction at issue was entered into before the cure provision was enacted. *Id.* at 710-11.

The legislature's intent in passing the cure provision at issue in *Jim Walter Homes* was to allow creditors to remedy past violations and relieve themselves of strict penalties. *Id.* Similarly, the legislature's intent in enacting section 305.006 has been characterized as an intent to

16

"encourage self-correction by lenders of known usury violations so that they could avoid being sued." *In re CPDC*, 337 F.3d at 446.

*Jim Walter Homes* is analogous to the present case, in that the transaction at issue took place prior to the amendment, but the cure action—which would allow S&K to avoid a potential usury violation—took place after the effective date of the amendment. As a general rule, a determination of whether a contract is usurious is made according to the usury statutes in effect at the time the usurious transaction took place. *See Strasburger Enters. v. TDGT Ltd. P'ship*, 110 S.W.3d 566, 573 n.8 (Tex. App.—Austin 2003, no pet.); *Domizio v. Progressive County Mut. Ins. Co.*, 54 S.W.3d 867, 872 n.2 (Tex. App.—Austin 2001, pet. denied). However, Texas courts have not yet specifically addressed whether the amendment to 305.006(d) should be applied retroactively to include transactions that took place prior to September 1, 2005. While it is a close case, we hold that the amendment to 305.006(d) was remedial and curative in nature and therefore applies retroactively. As a result, S&K was not prohibited from taking corrective action under 305.006(d). Bair Chase's twelfth and thirteenth issues are overruled.

*Attorney's Fees*

In its fourteenth issue on appeal, Bair Chase argues that S&K is not entitled to reimbursement for attorney's fees incurred in relation to the counterclaim for usury. Similarly, in its fifteenth issue, Bair Chase argues that S&K is not entitled to any fee award, due to its failure to segregate recoverable fees from unrecoverable fees.

The $1.4 million note provided for the recovery of S&K's "collection costs, including a reasonable amount for attorney's fees," in the event of default, and the guaranty agreement related

17

to the $1.4 million note contained a similar provision. S&K requested attorney's fees on the basis of these contractual provisions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1997) (providing that attorney's fees are recoverable for breach of written or oral contract). An award of attorney's fees to a plaintiff recovering on a valid claim founded on a written or oral contract is mandatory, while a determination of the amount of a reasonable fee award is up to the trial court's discretion. *See Alford*, 224 S.W.3d at 298.

A party seeking attorney's fees has a duty to segregate the fees incurred in pursuing claims for which fees are recoverable from those in which they are not. *West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 267 (Tex. App.—Austin 2002, no pet.). S&K states in its brief that it "was not required to segregate its fees because S&K's contract claim and Appellants' usury counterclaim were inextricably intertwined." However, the Texas Supreme Court has held that intertwined facts alone do not relieve a party of the duty to segregate and that "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Chapa*, 212 S.W.3d at 313-14. While a party's failure to segregate does not preclude recovery of attorney's fees, "an unsegregated damages award requires a remand." *Id.* at 314.

S&K argues that it is not required to segregate attorney's fees because S&K had to defeat Bair Chase's usury claim in order to prevail on its contract claim. *See Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (holding that fees incurred in successfully defending against counterclaim in order to collect full amount of note need not be segregated). However, unlike the plaintiff in *Varner*, S&K did not successfully defend against Bair Chase's counterclaim, but instead

18

took corrective action in order to avoid liability for usury. Because S&K's attorney's efforts in correcting the alleged usury violation cannot be characterized as successfully defending against a counterclaim, we hold that S&K was required to segregate its attorney's fees. Therefore, we remand for the purpose of determining the amount of attorney's fees that S&K incurred in pursuing its contract claim, excluding any fees incurred in correcting the alleged usury violations. Bair Chase's fourteenth issue is sustained.

Bair Chase's fifteenth issue—that S&K is not entitled to any claim for reimbursement for attorney's fees because of its failure to segregate—is overruled. The proper remedy for a failure to segregate fees is remand for an opportunity to segregate, rather than denial of the fee award. *See Chapa*, 212 S.W.3d at 314.

*Standing*

For the first time at oral argument, S&K contended that Barfield and Western Property, as guarantors, lack standing to assert a claim for usury. The issue of standing may be raised for the first time on appeal. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005).

As a matter of Texas law, a guarantor does not have standing to assert a usury cause of action. *El Paso Refining, Inc. v. Scurlock Permian Corp.*, 77 S.W.3d 374, 384 (Tex. App.—El Paso 2002, pet. denied) (op. on reh'g). Barfield and Western Property argue that this rule does not apply because they are not making a claim for penalties under the usury statutes, but are merely raising a defense that the contract was usurious and that therefore no interest is owed. However, "Texas law does not permit a guarantor to escape its obligation by asserting a usury

19

defense based on a usurious principal obligation." *Ginsberg 1985 Real Estate P'ship v. Cadle Co.*, 39 F.3d 528, 534 (5th Cir. 1994). A usury defense is personal to the debtor and may not be asserted by a guarantor unless the guaranty agreement also contains the usurious provision, which has not been argued in the present case. *See id.*; *Houston Sash & Door Co. v. Heaner*, 577 S.W.2d 217, 222 (Tex. 1979). As a result, Barfield and Western Property, as guarantors, lack standing to assert the counterclaim for usury.[8]

## CONCLUSION

Because we have determined that the trial court did not err in granting summary judgment, we affirm the trial court's order granting summary judgment. The award of attorney's fees in favor of S&K is reversed and remanded for a determination of the appropriate amount of the award after fees incurred in correcting the alleged usury violations are segregated from the fees incurred in pursuing S&K's recoverable claim.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed in part; Reversed and Remanded in part

Filed: June 5, 2008

---

[8] Because we affirm the trial court's summary judgment in favor of S&K on the counterclaim for usury, our determination that Barfield and Western Property lack standing to pursue the counterclaim does not affect the disposition of this appeal.